THE PEOPLE ex rel. E. H. Munsterman, County Collector,

v.

C. J. McDOUGAL et al.

Opinion filed December 16, 1903.

1. TAXES—what must appear in drainage commissioners' certificate for repair tax. Under section 70 of the Farm Drainage act of 1885, (Laws of 1885, p. 104,) the certificate of drainage commissioners for a repair tax should state that the amount certified is needed to keep the work, or some part thereof, "in repair for the year next ensuing."

2. SAME—a statement of purpose of drainage tax is not conclusive. A statement in drainage commissioners' certificate that the amount proposed to be raised by taxation is for the purpose of "cleaning and repairing the ditches of said district" is not conclusive, and if it is shown that the tax is not for such purpose it cannot be sustained as a repair tax, under section 70 of the Farm Drainage act.

3. SAME—what not a "repair" of drainage ditch. Deepening an open drainage ditch by dredging for a distance of some twenty miles, at an expense of nearly $25,000, is not a "repair" of the ditch, within the meaning of section 70 of the Farm Drainage act.

APPEAL from the County Court of Iroquois county; the Hon. FRANK HARRY, Judge, presiding.

J. W. KERN, State's Attorney, CAREY & SAUM, and MORRIS & HOOPER, for appellant.

ERNEST SEVERY, and A. F. GOODYEAR, for appellees.

Mr. JUSTICE SCOTT delivered the opinion of the court:

This was an application made by the county collector of Iroquois county to the county court of that county at the June term, 1903, for judgment against the lands of appellees for the amount of a delinquent drainage tax levied on November 1, 1902, by the commissioners of special drainage district No. 1 of Onarga, Douglas and Danforth townships, in Iroquois county. The tax levied upon the entire district was $25,000. For the purpose of collecting this tax the county clerk spread it upon the land in the district in the manner hereinafter specified, the tax

being extended on the records of the county collector, and a warrant for the collection thereof issued from the office of the clerk to the county collector, and the taxes involved in this suit were returned delinquent by the county collector. Objections were filed in the county court by appellees. Upon trial, judgment was entered by the county court sustaining the objections, and the cause comes to this court by appeal.

The district contains approximately 16,500 acres of land. In completing the work as originally planned, a little more than twenty-one miles of ditch was made and left open. This open ditch was from five to fourteen feet in depth and from six to twelve feet wide at the bottom. This district is organized and exists under the Farm Drainage act, (Hurd's Stat. 1901, p. 712,) and the work of providing the drainage in accordance with the original plan was practically completed in the autumn of 1888, at a total expense, including the cost of tile purchased, of approximately $95,000. Prior to June, 1888, for the purpose of determining what proportion of the expense of the drainage system the land of the various owners should bear, the land was classified in accordance with the statute. This classification was made on the basis of the benefits that would be derived by the land, both from the open ditch and from the tile that was to be put in. The open ditch is the main channel in the district. Tile drains carry the water from the lands of the various proprietors into the open ditch, and this open ditch carries the drainage out of the district. In 1892 $1098 was levied and raised for repairs in this district, and each year since a repair tax has been levied and collected, which has run in amount from $493 to $700 per annum. In the autumn of 1902 the main ditch throughout its entire extent, except the mile thereof next its outlet, had become filled up, so that the openings of the tile emptying into it had become covered with mud. For the purpose of cleaning out this deposit in the bottom of the

ditch, and also for the purpose of deepening the open ditch throughout that portion of its length where this deposit existed, the commissioners levied a tax of $25,000. The certificate of levy was made on November 10, 1902, and filed with the county clerk on the next day, and was as follows:

"We, the undersigned, commissioners of special drainage district No. 1 of Onarga, Douglas and Danforth townships, in the county aforesaid, do hereby certify that we require the sum of twenty-five thousand dollars ($25,000) for the purpose of cleaning and repairing the ditches of said district; therefore, we do hereby levy said sum of twenty-five thousand dollars ($25,000), and request the clerk of said Iroquois county to extend and charge the said amount of twenty-five thousand dollars ($25,000) against the several pieces and parcels of lands and lots in said district, including sub-district No. 1 of Onarga township, according to the rate or ratio heretofore established and approved."

In making this levy the commissioners sought to proceed under section 70 of the Farm Drainage act, (Hurd's Stat. 1901, p. 735,) which provides that it shall be the duty of the commissioners, on or before the first day of December of each year, to file with the county clerk a statement of "the amount, if any, necessary to be levied to keep the work, or any part thereof, in repair for the year next ensuing," and the amount of any deficiency in the payment for repairs theretofore made, "and the clerk shall compute the *pro rata* share which each tract or parcel of land or property in said district, assessed for benefits, will have to pay to raise said respective amounts, which *pro rata* share shall be in the same proportion as the assessment for the construction of said work."

The tile which drain the lands of the objectors empty into the open ditch in the last mile of its course, so that their lands would, in fact, not be benefited by the proposed expenditure of the $25,000. Moreover, in the clas-

sification of the lands upon which the proportion of the expense of the construction of the original work which each tract should bear was determined, and upon which this $25,000 levy was distributed upon the lands of the district, the benefits taken into consideration were not alone those resulting from the open ditch, but likewise those resulting from the tile drainage. It will be perceived that not only was the $25,000 to be expended in a manner that would be of no benefit to the property of the objectors, but they were required to contribute to it on the basis that the construction or improvement of the tile drainage was to be provided for in its expenditure. It will be observed that section 70 authorizes the levy of this tax only for the purpose of raising such an amount as may be "necessary to be levied to keep the work, or any part thereof, in repair for the year next ensuing," and for the payment of any deficiency there may be in the amount of money raised in other years to pay for repairs which were made in such years. No such deficiency is shown here, and the clause authorizing taxation to meet a deficit of that character will not be considered in this case.

The certificate recites that the levy is "for the purpose of cleaning and repairing the ditches of said district." In accordance with the statute, the statement should have been that it was for repairs. Where the work of repairing includes that of putting open ditches in their original condition, it may perhaps be argued that repairing includes cleaning, and that the word "cleaning," in the certificate, was therefore superfluous. We are inclined to think, however, that it was not so understood by the commissioners in making the levy. On the 18th of November, 1902, seven days after the certificate of levy was filed, the commissioners entered into a contract for the work for which they proposed to pay with this levy. That contract provided for cleaning out the open ditch, except the lower mile thereof, and deepening

it throughout the same portion of its length to a depth greater than that which it originally had. The amount that its depth was to be increased beyond the original depth is uncertain from the testimony. One of the commissioners estimated it at three or four inches. The bottom of the ditch was also to be changed in another respect. As originally made it ran on a level for several hundred feet, then dropped down slightly and continued on a level again, and then again dropped down, and so on throughout its entire length. Under the contract of November 18, 1902, the bottom of the open ditch was to be given a gradual slope from its head to the place where the work was to terminate, one mile above its outlet. This contract provided for the doing of all the work that was to be done, except the cleaning and deepening of the ditch where it runs through the city of Gilman. This part of the ditch was excepted from the contract for the reason that the work under the contract was to be done by steam dredges and there were arches built over the ditch in the city of Gilman through which the dredges could not pass, making it necessary to do the work in that city by some other method. The contract price for the work that was to be done with the dredges was some amount slightly in excess of $23,000, while the engineer estimated the total expense of the proposed work of cleaning and deepening, including the work to be done in the ditch through the city of Gilman, at $24,200. At the time this case was heard in the court below the work of cleaning and deepening the ditch was progressing in the manner above described, and it appeared from the testimony of one of the commissioners that such work was the work they had in contemplation in the autumn of 1902 and for which they made the levy in question.

The levy of this tax was made at a meeting of the commissioners held November 1, 1902. The record of that meeting shows the tax to have been levied "for cleaning out and repairing the ditches." During the same month

the commissioners made report of the financial condition of the district for the year ending October 31, 1902, in which is included the following statement: "At the regular meeting, November 1, 1902, the commissioners made a levy of $25,000 for the purpose of deepening and cleaning out the ditches of this district." It is thus apparent that the commissioners, in making this levy, attached to the terms "cleaning" and "repairing" a much wider significance than can be given the term "repair" under section 70 above cited, and it is also apparent that the commissioners were without authority to make this levy, under that section, for the purposes for which it was made, except such portion of the levy, if any, as was necessary "to keep the work, or any part thereof, in repair for the year next ensuing." It is certain from the record in this case that the $24,200,—the amount of the engineer's estimate,—was not levied for any purpose within the meaning of section 70. We think the evidence offered by objectors was sufficient to cast upon the county collector the burden of showing that the remaining $800 was authorized by that statute, and as appellant failed to offer any evidence showing that any part of the tax was necessary for repairs for the ensuing year, the action of the court in sustaining the objection that the commissioners were without power to make the levy was proper.

Appellant cites the case of *Ottawa Glass Co.* v. *McCaleb*, 81 Ill. 556, in support of the proposition that "the commissioners, acting within the scope of their authority, are the judges as to whether or not the tax in question is a repair tax, and their judgment in the matter is not subject to review." If this statement of the law were correct it would relieve the courts of the burden of determining whether the tax was a valid one. We find, on examination, however, that the authority cited does not warrant the conclusion which counsel for appellant have drawn therefrom. In that case a bill had been filed to restrain the collection of taxes against the Ottawa Glass

Company, for the reason, as charged, that the State Board of Equalization, which had assessed the capital stock and franchises of the company, had no constitutional warrant to make the assessment, and for the reason that the assessed value, as fixed, was excessive in amount and was so high as to be oppressive. In determining the matter the court said, in refusing to interfere on the ground that the assessment was too high (p. 563): "Hence the legally constituted board of equalization have acted within the scope of their authority, and if they have reasoned incorrectly and erred in judgment we have no power to review and correct their action. They are empowered by law to fix the value of the property of corporations for taxation, and we can afford no relief, even if the rules that govern them are not such as commend themselves to our notions of the best means of ascertaining such value." It will be seen that the case referred to falls far short of sustaining the doctrine that the courts are bound by the statement of the commissioners made in their record and in the certificate of levy that the tax was for "cleaning and repairing." On the other hand, in the case of *O'Day* v. *People*, 171 Ill. 293, where school directors had levied a tax "for building purposes," this court found, on consideration of the evidence introduced in the court below, that the tax so levied was levied for purposes which were not building purposes, and reversed the judgment for such taxes without remanding the cause; and the same investigation was made and approved by this court in *Wabash Railroad Co.* v. *People*, 187 Ill. 289.

The statement of the drainage commissioners in their certificate that the tax levied is a tax for repairs is not conclusive, and where it is shown that it is not a tax for that purpose it cannot be sustained as a repair tax under said section 70.

The record of the commissioners and the certificate of levy are each deficient in failing to state, in substance,

that the levy is made to keep the work, or some part thereof, in repair for the year next ensuing. Nor was the method pointed out by the statute for the collection of this tax followed. It should have been extended upon the tax books of the township collectors, and warrants for the collection thereof should have issued to the latter officers. We prefer, however, to place our holding on the ground that the commissioners were without power to levy this tax under section 70 of the Farm Drainage act.

The judgment of the county court will be affirmed.

*Judgment affirmed.*