HENRY HERSCHBACH *et al.* Appellants, *vs.* THE KASKAS-
KIA ISLAND SANITARY AND LEVEE DISTRICT *et al.* Ap-
pellees.

*Opinion filed October 16, 1914—Rehearing denied Dec. 4, 1914.*

1. EQUITY—*when court of equity has jurisdiction of bill to en-
join collection of drainage assessment.* A court of equity has ju-
risdiction of a bill which seeks not only to restrain the collection
of an alleged void drainage assessment but also to enjoin the ex-
penditure of money already collected, the levy of other threatened
assessments and the issue and sale of bonds based thereon, as the
remedy at law by objecting to the assessment on application for
judgment and order of sale is inadequate and a multiplicity of
suits will be prevented.

2. CONSTITUTIONAL LAW—*whether a general act is applicable to
a given situation is a legislative question.* The fact that the legis-
lature has passed a special act is a legislative determination that
a general law cannot be made applicable to the situation, and if the
subject of the act is not one upon which special legislation is spe-
cifically prohibited by the constitution, the question whether a gen-
eral act could have been made applicable is not open for judicial
determination.

3. SAME—*the legislature cannot authorize a levy of special as-
sessment for other than corporate purposes.* The legislature can
authorize special assessments by the corporate authorities of a
drainage district for corporate purposes only, and is without power
to authorize an assessment for attorneys' fees for services ren-
dered before the district was in existence and for the expenses of
committees in connection with the passage through the legislature
of the special act creating the district.

4. SAME—*term "corporate authorities," as used in constitution,
explained.* The term "corporate authorities," as used in section 31
of article 4 of the constitution, authorizing the legislature to pass
laws for the organization of drainage districts and the levy of
special assessments by the corporate authorities thereof, means
those municipal officers who are either directly elected by the peo-
ple of the municipality or appointed in some mode to which they
have given their assent. (*Owners of Lands* v. *People,* 113 Ill.
296, distinguished.)

5. SAME—*act of 1913, incorporating Kaskaskia Island Sanitary
and Levee District, is unconstitutional.* The provision of the spe-
cial act of 1913 incorporating the Kaskaskia Island Sanitary and
Levee District, (Laws of 1913, p. 278,) which authorizes the ap-

pointment of the commissioners by the circuit court of Randolph county without any provision for a referendum vote by the people to express their assent to such appointment, renders the entire act unconstitutional and void, for the reason that the commissioners so appointed are not "corporate authorities."

6. SAME—*what does not amount to assent by people to method of appointing commissioners.* The fact that the preamble of a special act incorporating a drainage district recites that the legislature has been petitioned to pass an act does not authorize a holding that the people have assented to the method provided in the act for the appointment of ·commissioners by the circuit court.

APPEAL from the Circuit Court of Randolph county; the Hon. GEORGE A. CROW, Judge, presiding.

R. E. SPRIGG, and J. FRED GILSTER, for appellants.

EMERY ANDREWS, RAYMOND G. REAL, and ARTHUR E. CRISLER, for appellees.

Mr. JUSTICE VICKERS delivered the opinion of the court:

The complainants below, who are land owners and tax-payers of the Kaskaskia Island Sanitary and Levee District, filed a bill in the circuit court of Randolph county against said sanitary district, and the commissioners thereof, for the purpose of enjoining the said commissioners and other officers of said district from proceeding to collect an assessment levied upon the lands of the district under ordinance No. 1, and from making any additional assessments, or issuing or selling bonds in anticipation of any assessment, or from using and expending any money realized from said assessment already levied. Said sanitary district was organized under a special act which became operative July 1, 1913, (Laws of 1913, p. 278,) incorporating the Kaskaskia Island Sanitary and Levee District. The principal ground upon which the bill is based is the alleged unconstitutionality of the act under which the district was organized. The defendants below filed a general demurrer

to the bill, which was sustained, and complainants having elected to stand by the bill it was dismissed, and from the final decree dismissing the bill complainants have prosecuted this appeal.

The particular assessment the collection of which is sought to be enjoined was levied under an ordinance passed by the commissioners on August 25, 1913. After reciting the passage of the act incorporating the district, and some of its provisions, and the necessity for a preliminary assessment to pay for survey, maps, plans and profiles of the lands of said island and all accretions thereto, the ordinance levies an assessment of $5171.77 on all of the lands of the district for the purpose of paying the expenses of "legislation, organization of the commissioners and the preliminary survey, maps, plans, profiles and estimates necessary to be made to ascertain the nature, kind, character and the extent of improvements which can or ought to be made by said commissioners, and to pay any and all other necessary and incidental preliminary expenses necessary to carry out the object and purposes of the act." The ordinance provides that the commissioners shall proceed to make out an assessment roll and to distribute said assessment upon the lands, lots, pieces and parcels of land of said district as they may determine the benefits which may be derived by said lands from the said preliminary work aforesaid, and that said assessment roll be certified to as a fair and just distribution of the assessment upon the several parcels of land in said district according to the benefits received by each parcel from the preliminary work aforesaid. The ordinance further provides that the assessment shall be designated as assessment No. 1, and that it shall be payable in one installment to become due on January 2, 1914, and that said assessment shall be paid on or before March 10, 1914, or be returned as delinquent and collected in the same manner as other general taxes. The bill alleges that the commissioners will proceed to

spread additional assessments on the lands of said district and will issue bonds to the amount of $175,000 predicated upon said assessments, and that said bonds will be sold unless appellees are restrained from so doing.

Appellants contend that the whole act under which said district is incorporated is unconstitutional and void, and that in no event and under no circumstances can a valid levy be made under its provisions. It is contended that the act is void as being obnoxious to section 22 of article 4, of the constitution of 1870, which prohibits special local legislation; and further, that the act is in contravention of sections 9 and 10 of article 9 of our State constitution; also that it is in contravention of section 31 of article 4 and section 2 of article 2 of the constitution. Appellants make a special objection to the levy for preliminary work, claiming that such assessment is void because, it is said, it is not based upon benefits accruing to the lands of the district, but that it is for preliminary work which may or may not result in any benefit, and for the payment of expenses of legislation which, it is argued, are contrary to public policy and in no event could be a proper charge against the drainage district.

Before proceeding to a consideration of the merits of this controversy, the appellees insist that the decree below should be affirmed for the want of jurisdiction in a court of equity to entertain the bill. In support of this contention it is urged that appellants have a complete and adequate remedy at law, since all of the objections here relied upon could be raised on an application for judgment for delinquent taxes. It is, of course, always a sufficient objection to the jurisdiction of equity that there is a complete and adequate remedy at law, (*Bodman* v. *Drainage District,* 132 Ill. 439,) and this rule is applicable to a bill to enjoin the collection of a tax; (*Ayers* v. *Widmayer,* 188 Ill. 121; *Correll* v. *Smith,* 221 id. 149;) but where the bill seeks not only to restrain the collection of a void

tax but also to enjoin other threatened levies, the expenditure of money already collected or the sale of bonds issued without authority of law, then equity will take jurisdiction to restrain such acts on the ground that the remedy at law is inadequate and to prevent a multiplicity of suits. (*Darling* v. *Gunn,* 50 Ill. 424; *Wilson* v. *Sanitary District,* 133 id. 443; *Chicago and Milwaukee Electric Railway Co.* v. *Vollman,* 213 id. 609.) The bill in the case at bar charges that the commissioners are threatening to levy other assessments upon the real estate of the district and to issue bonds in anticipation of such assessments and to sell the same, and that they will do so unless restrained by injunction. These allegations, in connection with those in respect to the unconstitutionality of the act under the authority of which all the acts sought to be enjoined have been or will be committed, under the decisions of this court state a case bringing the subject matter within the jurisdiction of a court of equity.

The act of the legislature creating this sanitary district is both special and local, and appellants insist that for this reason the act is unconstitutional, as being in violation of section 22 of article 4. It is said that one of the two drainage laws now in force might have been resorted to for the purpose of organizing Kaskaskia island into a district, or if neither of said general acts was applicable, that some other general law might have been passed, and if a general act could be passed which would be applicable to the situation, then a special act is prohibited by that clause of section 22 of article 4. which provides that no special act shall be passed in a case where a general law can be made applicable. Whether a general act of the legislature is applicable to a given situation is a question for the legislature to determine, and its determination of that question is not reviewable by the courts. Section 22 of article 4 of the constitution prohibits special legislation in respect to certain specified subjects, and contains the general language

above referred to which prohibits special legislation in all other cases where a general law can be made applicable. The fact that the legislature has passed a special act is a legislative determination that a general law could not be made applicable, and since the subject of the act is not one upon which special legislation is specifically prohibited by the constitution, the question whether a general act could be made applicable is not open for judicial determination. *Wilson* v. *Sanitary District, supra.*

Before considering any of the other objections urged to the validity of this act it will be necessary to state briefly some of the principal provisions of the act itself.

The act is preceded by a preamble, which recites that "whereas a majority of the legal voters of the island of Kaskaskia and a majority of the land owners owning the major portion of the land upon said island, have petitioned the General Assembly of Illinois to organize for them a sanitary and levee district comprising the lands of said island," and recites the necessity for such act for the adequate drainage and the protection of the health of the inhabitants of the said island, which said preamble is then followed by the body of the act. Section 1 creates the corporation under the name of "The Kaskaskia Island Sanitary and Levee District," and provides that by that name it shall be a public corporate body, with power to sue and be sued, conduct the business of said corporation, have perpetual existence and perform and execute all the powers conferred upon it by this act or incident thereto, and that it may have a common seal and change the same at its pleasure. Section 2 declares the object and purpose of creating said corporation to be the drainage of the lands of said island by artificial drains, canals, ditches, levees and other drainage facilities and to provide ways and means necessary to carry out and accomplish said objects and purposes, and thereby to benefit and make more valuable the land of said island and to preserve and promote the health

of the residents thereof; and it is further provided in said section that in order to accomplish these purposes said act shall be liberally construed, and as an exercise by the legislature of all power appertaining to it for the benefit and protection of the lands on said island and the lives and health of the residents thereof. Section 3 relates to the manner of appointing commissioners, and provides that the business of said corporation shall be conducted by three commissioners, who shall be resident land owners residing upon said island and who shall be appointed by the circuit court of Randolph county in term time, or by the judge thereof in vacation, by an order signed by the presiding judge of said court, or if in vacation by the judge thereof who presided at the preceding term thereof, and filed with the clerk thereof and duly entered of record; that the said commissioners shall be appointed upon the passage of the act, one to serve for one year, one for two years and one for three years, each to serve until his successor is duly appointed and qualified, as provided by the act, the successor to each to be appointed for a term of three years. Said section also provides that any of said commissioners may be removed for cause by the court at any time, the subsequent appointments to be made on the first day of July of each year. By section 4 it is provided that the commissioners shall meet and organize by selecting one of their number president of the board, another secretary, and by choosing a clerk and a treasurer who shall not be members of said board. Section 5 provides for the term of office of the treasurer and his qualifications, etc., and section 6 provides for the bond of the treasurer. Section 7 defines the duties of the president, and section 8 the duties of the clerk. Section 9 prescribes a compensation of four dollars a day for each of the commissioners for each day actually put in, in and about the performance of the duties imposed upon them by said act. Section 10 defines the corporate powers of said district, and authorizes the commis-

sioners to build levees, construct all necessary ditches and drains, erect pumping stations as they may deem necessary, build roads and bridges and maintain and operate the same, and make any other necessary improvements upon said island for the purpose of protecting the health of the inhabitants of said island, and all the lands thereof from wash and overflow, and provides that in order to raise money for said improvements the said district is authorized to levy special assessments upon the property benefited, including all public highways and public property upon said island benefited thereby, and authorizes said corporation to accept and receive any appropriations either from the State or national government, or voluntary donations and subscriptions from any other source, etc., for the purpose of making said improvements or for the performance of the duties imposed by the act. Section 11 authorizes the corporation to employ all engineers, attorneys, clerks and labor necessary to enable it to fully and faithfully carry out the duties imposed by the act and to make and enter into contracts for that purpose. Section 12 is as follows:

"Sec. 12. *Expense of organization.*—Said commissioners shall first pay out of any funds received by them other than by special assessment the preliminary expenses of employing attorneys, and the necessary expenses of committees and any and all other necessary expenses in procuring the passage of this act, and all other legislation necessary to attain the objects and purposes contemplated by this act, including any expenses and attorney's fees necessarily expended in and about any legislation concerning the management or control of the Kaskaskia commons permanent school funds, whereby this corporation may be benefited, and if no other funds are available for such purposes then the same may be included in any special assessment made for the improvements made upon said island by said district, as a part of the expenses thereof, or for the engineering and all other preliminary expenses provided for in this section for

any improvement they may contemplate, make a preliminary assessment on the lands, lots or parcels of lands proposed to be included in any improvement made by them for the purpose of paying and defraying said expenses, which shall be made in the same manner as the assessment made for the work, except that it need not be confirmed by the circuit court of Randolph county, but shall be made by a proper ordinance passed by the said commissioners and entered upon their record, and the finding of the said commissioners of the necessity of said assessment shall be conclusive, which said assessment shall be payable on or before January 2, after it is made and shall be collected by the clerk of the board and turned over to the treasurer of the board, and any unpaid portion thereof shall be returned delinquent to the county treasurer of Randolph county by March 10, after the same becomes due, and collected in the same manner as other general taxes."

The subsequent sections of the act provide for the carrying out of the purposes of the act and give detailed directions therefor. It will not be necessary to set out those sections in order to determine the questions that are controlling upon this record.

Appellants contend that section 12 of the act in question is unconstitutional because it authorizes an assessment not based upon the benefits received by the lands of the district and that it authorizes the levy of taxes for purposes other than corporate purposes. Preliminary surveys, making of maps, and other engineering work which is necessary to enable a municipal corporation to determine the character and extent of improvements to be made, if made by the corporate authorities after the municipality is duly organized, may be regarded as corporate purposes within the meaning of the constitution, and if such work results in a benefit to the lands of the municipality it may properly be included in a special assessment levied to pay for the improvement where the aggregate amount of the expenses

does not exceed the aggregate amount of benefits conferred. But section 12 of this act authorizes a levy of taxes for expenses incurred prior to the time the district had any existence. Those expenses were not incurred by the corporate authorities of the district nor can they be said to have been made for a corporate purpose. Such items as expenses of committees in connection with the passage of the act through the legislature, and attorney fees for services rendered before the district was incorporated, cannot be held to be such expenses as the legislature may authorize a special assessment to meet. The legislature can only authorize special assessments for corporate purposes by the proper authorities of a drainage district. The ordinance passed under which the present assessment was levied shows that the levy was made for the purpose of meeting expenses incurred before the district was incorporated, and such expenditures must be held to be illegal, as not being within the constitutional power of the legislature to authorize.

But there is still another very serious objection to the assessment here sought to be enjoined. Section 31 of article 4 of the constitution provides that the General Assembly may pass laws permitting the owners of lands to construct drains, ditches and levees for agricultural, sanitary or mining purposes across the lands of others, and provides for the organization of drainage districts, and vests the corporate authorities thereof with power to construct and maintain levees, drains and ditches, and keep in repair all drains, ditches and levees heretofore constructed under the laws of this State, by special assessments upon the property benefited thereby. It will be noted that the power of the legislature to authorize special assessments for benefits received is limited to the "corporate authorities" of the drainage districts that are organized under legislative authority. We have already pointed out that the drainage commissioners of the appellee district were to be appointed by the circuit court or the circuit judge of Randolph county. Are com-

missioners thus appointed. the "corporate authorities" of the municipality within the meaning of this clause of the constitution? By "corporate authorities," as used in this clause of the constitution, must be understood those municipal officers who are either directly elected by the people of the municipality or appointed in some mode to which they have given their assent. (*Lovingston* v. *Wider,* 53 Ill. 302; *Cornell* v. *People,* 107 id. 372; *Wetherell* v. *Devine,* 116 id. 631; *Givins* v. *City of Chicago,* 188 id. 348.) The act of the legislature under which this district was organized contains no referendum clause, nor is there any other provision or means provided therein giving the tax-payers of the district an opportunity to express their assent to its provisions. After the adoption of the first amendment to the constitution of 1870 relative to the organization of drainage districts, this court held, under general drainage acts passed subsequently thereto, that persons other than those elected by the people of the district or appointed in some method to which the land owners had given their assent constituted the legal corporate authorities of such districts. Thus, in *Owners of Lands* v. *People,* 113 Ill. 296, it was held that the act of 1879, which made the county commissioners of counties not under township organization the drainage commissioners of all the drainage districts of the county, was a valid law, but in this and other cases it was pointed out that these districts were organized by the voluntary act of the majority of the land owners in petitioning for the organization, and in this respect those cases are distinguishable from cases decided under special acts of the legislature which organize a given territory into a drainage district and provide for the appointment or election of the officers of such district in some way to which the people have not assented. In *Lovingston* v. *Wider, supra, Cornell* v. *People, supra, Wetherell* v. *Devine, supra,* and in other cases, this court had defined the corporate authorities of municipal corporations as being the persons

elected in the municipality or appointed in some way to which the voters had given their assent. When the amendment of 1878 was adopted to the constitution and employed the term "corporate authorities," it must be assumed that those words were employed with the meaning that had been given thereto by the decisions of this court. The cases under the general Drainage law, where districts were organized upon the voluntary action of the land owners, are not controlling here, since this act was local and special and organized the territory into a drainage district without any act on the part of the property owners and subjects their property to burdens of taxes to be imposed by persons who have not been elected by the people of the district or appointed under any law to which they have given their assent. It is said that a majority of the land owners of this island petitioned the legislature to pass the act in question, and that the signing of such petition was a manifestation of assent within the requirements of the constitution. We cannot so hold. The recital in the preamble of this act only shows that the legislature had been petitioned to pass an act incorporating the island into a sanitary district. Accepting the recital of the legislature as conclusive of the fact that a petition was filed, it cannot be construed as a petition for the passage of an act which would deprive the people of the island of their constitutional rights. We would not be warranted in so holding unless the language of the preamble were so clear as to admit of no other construction. The commissioners of this district not having been elected by the people of the municipality nor appointed in any way to which they have given their assent cannot be held to be the corporate authorities of the said district.

In the case of *Cornell* v. *People, supra,* this court had occasion to determine whether a South Park commissioner appointed by the Governor under an amendatory act of the legislature was a legally appointed officer of the corpora-

tion. The original act incorporating the South Park district provided that the commissioners should be appointed by the Governor and that all vacancies should be filled by appointment "of the judge of the circuit court of Cook county." This act was upheld as valid on the ground that it had been adopted under a referendum vote by the people of the district. Subsequently, in 1881, the legislature passed an act taking the power of appointing the commissioners away from the judges of the circuit court and providing that the Governor of the State should appoint all park commissioners. This amendatory act did not contain a referendum and its provisions had never been assented to by the people. This court held that the appointment of all park commissioners by the Governor was illegal and that commissioners thus appointed did not constitute the corporate authorities of the park district. The reasoning of this court in that case is conclusive of the question now under consideration in the case at bar. The persons who levied the assessment and who are threatening to levy other assessments and issue bonds are not the corporate authorities of this district and their acts as such are illegal and void. The result of this holding is to render the entire act unconstitutional and void. The act cannot stand with those sections relating to the appointment and powers and duties of the commissioners eliminated.

The judgment of the circuit court of Randolph county sustaining the demurrer and dismissing the bill is reversed and the cause remanded, with directions to the circuit court to overrule the demurrer.

*Reversed and remanded, with directions.*