(No. 22273.—

H. G. BEARDSWORTH *et al.* Appellees, *vs.* THE WHITESIDE AND ROCK ISLAND SPECIAL DRAINAGE DISTRICT *et al.* Appellants.

*Opinion filed April 21, 1934.*

CRAIG & CRAIG, MCCALMONT, RAMSAY & LITTLE, and CHARLES C. MCMAHON, for appellants.

WOOD & MCNEAL, for appellees.

Mr. JUSTICE STONE delivered the opinion of the court:

This case is here on appeal from the circuit court of Whiteside county taken first to the Appellate Court and by it transferred to this court on jurisdictional grounds. The circuit court, on amended and supplemental bills of

appellees, entered a decree finding that certain assessments of the Whiteside and Rock Island Special Drainage District were void and enjoining the district from collecting the same on appellees' property. The decree also enjoined the payment, from any funds on hand, of the claims of certain named appellants for services rendered the district.

The formation of the district, as set out in the bill, was under the Farm Drainage act. In 1920 the district made a new classification of lands and levied an assessment for the cost of a new improvement. It was held in *People* v. *Allen,* 317 Ill. 92, and in the same case in 330 id. 433, that none of the lands of the appellees here were benefited by the improvement and were not liable for the payment of any part of that assessment. The bill here alleges that notwithstanding these facts the county collector made application for judgment and sale against the lands of appellees for remaining and subsequent installments of that assessment; that appellees filed objections thereto and application for judgment was denied; that in the years 1923 to 1928 the district, under the classification used in the 1920 assessment, made levies of various amounts for interest and repairs, which were illegal assessments in that they were made in a lump sum, without any specification as to what repairs were provided for, and that attempts were made by the collector to collect these assessments against the lands of the appellees, and it was objected that the assessments were not legally made and that as to assessments for interest appellees' lands were not liable therefor. It is alleged in the bill that in each of the years 1926, 1927 and 1928 the county collector filed an application for judgment on the third, fourth and fifth installments of the assessments levied for interest and repairs; that appellees filed objections thereto and the county court denied the application but the county collector was allowed to withdraw his application for judgment, and so the assessments have remained as clouds on the title of the appellees' land,

which the bill prays may be removed and the defendants enjoined from attempting to collect any such tax. The bill also alleges that in January, 1926, a levy was made to pay certain warrants issued to the appellants' attorneys, surveyor and others, which levy was void for the reason that it was made for the payment of past indebtedness.

A supplemental bill was filed in 1930 setting out that a second assessment for the purpose of paying attorneys, engineers and commissioners was made by the commissioners in 1929 and extended against the lands of appellees, which is likewise void. The prayer of the bill and supplemental bill is that the assessment for repairs and interest made each year from 1923 to 1928, inclusive, and the assessments of 1926 and 1929 for the purpose of paying attorneys, engineers, commissioners and other defendants, be declared void, and that the claims of the attorneys, engineers and commissioners and other defendants be decreed invalid as against the district, and that all warrants issued to such persons for services rendered, for which no previous provision had been made for payment, be declared void and that the treasurer be enjoined from paying any such warrants and orders, and that those specifically named be enjoined from collecting or attempting to collect from the district any sum claimed by them to be for services rendered before the assessment was made to provide for such services.

Appellants demurred to the bill and their demurrer was overruled. They thereupon answered, admitting the organization of the district and denying all material allegations of the bill as amended and asserting the validity of the various assessments and warrants. A hearing before a master in chancery was had. The chancellor overruled exceptions to his report and entered a decree granting the relief prayed except as to the levy of a certain deficiency of November 1, 1928, amounting to $2000, no part of which was levied on the lands of appellees and no part thereof paid by them.

No cross-errors were assigned and that particular levy is out of the case.

Appellants have filed many assignments of error, which, however, may be grouped under the following heads: (1) The court of chancery was without jurisdiction, as appellees had an adequate remedy at law; (2) the levies involved were legal and valid; (3) as appellees paid no part of the moneys on hand for the various levies but the balances in the various funds of the district were voluntarily paid to meet certain obligations, it was error to enjoin their application to such purposes; and (4) the decree enjoining payment of the warrants issued is erroneous because services performed by the various appellants were legal and valid.

Appellants' first contention—*i. e.,* that a court of chancery was without jurisdiction—cannot be sustained. Though the rule is that in cases where an adequate remedy at law exists a court of equity will not take jurisdiction, (*Herschbach* v. *Kaskaskia Sanitary District,* 265 Ill. 388,) and such rule is applicable to a bill to enjoin the collection of a tax, (*Correll* v. *Smith,* 221 Ill. 149; *Ayers* v. *Widmayer,* 188 id. 121;) it is also the rule that where, as here, the bill alleges that the county collector has been permitted to withdraw his application for judgment upon the filing of objections thereto at various times, leaving the assessments as clouds on the title of the complainant, and where the bill seeks not only to restrain the collection of a void tax but also the expenditure of money already collected, equity will take jurisdiction not only on the ground of inadequacy of remedy at law but likewise to prevent a multiplicity of suits. (*Herschbach* v. *Kaskaskia Sanitary District, supra; Chicago and Milwaukee Electric Railway Co.* v. *Vollman,* 213 Ill. 609; *Wilson* v. *Board of Trustees,* 133 id. 443.) Since the bill and supplemental bill in the case before us make charges of such character, the subject matter is brought within the jurisdiction of the court of equity.

Appellants, in discussing their claim that the various levies were legal and valid, say that in 1930 the form of organization of the district was changed from the Farm Drainage act, under which it was organized, to the Levee act, which act expressly provides that a levy may be made to pay prior obligations. They concede, however, that the levies in this case were made prior to the change in the organization of the district, and that under the Farm Drainage act the district did not have power to levy assessments for past obligations. The expenses of the organization are not here involved. They also say that levies for repairs made during the various years were so made under section 70 of the Farm Drainage act. (Smith's Stat. 1933, p. 1183.) That section authorizes the levy of a tax only for the purpose of raising such amount as may be "necessary to be levied to keep the work, or any part thereof, in repair for the next year ensuing" and for the payment of any deficiency that may exist in the funds raised in other years to pay for repairs which were made in such years. The statement of the commissioners, however, in their certificate, that the tax levied is one for repairs, is not conclusive, and where it is shown that it is not a tax for that purpose it cannot be sustained as a repair tax under section 70. (*People* v. *McDougal,* 205 Ill. 636; *Wabash Railroad Co.* v. *People,* 187 id. 289.) It is charged in the bill that these levies, while ostensibly made for repairs, were in reality for the purpose of using the funds collected to pay the commissioners and their solicitors and surveyors exorbitant and illegal fees. The chancellor found in his decree that the levies made in each year from 1923 to 1928, inclusive, for repairs, aggregated $27,000 and those for interest aggregated $17,565.78. He also found that all of the assessments for repairs were made in a lump sum, without any specifications as to what repairs should be made, with the exception of one item of $500 designated for repair of flood-gates; that all such assessments

made subsequent to 1920 were made without notice until after they had been filed with the clerk of the district; that the amount actually expended by the district for repairs during those years was but a very small part of the amount levied for such purpose; that no plans were made during that period, or prior thereto, for any repairs, and that the assessments were not made with any intention of using the sums raised for that purpose; that substantially all the money used from such levies was used to pay commissioners, attorneys and engineers fees in connection with litigation to collect the assessment in 1920 from the appellees, and that the commissioners either paid the fees directly from the repair fund or transferred the money from the repair fund to the general fund. The chancellor also found that all the levies for repairs, except $500 for floodgates, are void, and that as to appellees' land the assessment of $500 was also void. The decree entered also enjoined the payment, from sums of money on hand, of outstanding warrants to the engineers, attorneys or commissioners. It is not necessary to discuss the evidence in detail. We are convinced that the chancellor could have reached no other conclusion as to the facts.

Appellants argue that the levies for repairs met the requirements of section 70, and so appellees cannot have the benefit, here, of objections which they could not urge on application for judgment and sale. To this contention there are two answers: (1) No effective opportunity was given appellees to object to the judgment and sale, for when objections to application for judgment on the levies were filed the county collector withdrew his application; (2) as we have seen, the levies for repairs did not comply with section 70 of the Farm Drainage act.

Regarding levies for interest, section 70 of the Farm Drainage act, authorizing such levy, requires that the certificate of levy contain a statement of the dates, number and amount of all outstanding notes, orders or bonds is-

sued and which shall remain unpaid at the time of their maturity and rate of interest thereon, and the amount necessary to be levied to meet the payment of the interest for the ensuing year. The certificate of levy filed in this case recites "that we, as such commissioners, have heretofore issued the notes and written obligations of said district and that the same remain unpaid." The certificate then recites that the number and amount of such notes, together with time of maturity and rate of interest, were correctly shown "in the proper columns, as follows:" The space following, however, is blank, and nowhere in said certificate of levy is there a statement required by the act. Such a statement is mandatory. The tax-payer has a right to be informed for what purpose his property is to be taxed and the amount of the tax. (*People* v. *Peebles,* 291 Ill. 537; *People* v. *Glenn,* 207 id. 50.) Since the certificates for the levies of interest did not comply with section 70, the chancellor did not err in finding that the assessments made thereon were void. The chancellor also found that since the lands of appellees are not liable for the principal of the assessments made in 1920 they could not be held liable for interest on bonds issued to pay for the work done under the levy of that year, and in this the chancellor was right. As we have said, appellees' lands were completely exonerated from the payment of any tax under the 1920 assessment or interest thereon. The chancellor did not err in enjoining the collection of the assessments for repairs and interest.

Concerning the levies of 1926 and 1929 for the purpose of paying bills, counsel seem to concede that of the levy of 1926 for $21,784.82, $16,501.01 is invalid as levied to pay bills previously contracted, but argue that the remainder of that levy, amounting to $4673.81, and the entire levy of 1929, amounting to $10,587.41, are valid because levied prior to the creation of any obligation of the district which they were intended to meet, and that

they were levied to enable the district to carry on pending litigation against it and other litigation that may arise by reason of objections to assessments theretofore levied in the district. They also argue that the rule of law prohibiting the levy of assessments to pay previous obligations does not prevent the application of the part of these levies voluntarily paid in, to the purposes for which they were levied.

In *Winkelmann* v. *Drainage District,* 170 Ill. 37, and *Spring Creek Drainage District* v. *Elgin, Joliet and Eastern Railway Co.* 249 id. 260, it was held that no contract or obligation of a special drainage district, except for preliminary work, can be paid for from proceeds of a subsequent levy, and that this rule applies to attorneys, engineers and commissioners' fees, and that any portion of the assessment made to pay past indebtedness is unauthorized and void. These cases construed section 37 of the Levee act before its amendment in 1909. By that amendment additional purposes for which an assessment may be levied by the commissioners were provided, as follows: "To pay obligations incurred for the current expenses of said district or in the keeping in repair and protecting of the work of such district." It was held in *McGee Creek Drainage District* v. *Sides,* 336 Ill. 267, *Deneen* v. *Deneen,* 293 id. 454, and *Hunt Drainage District* v. *Cole,* 283 id. 105, that an assessment could be levied for obligations already incurred for current expenses. Section 37 of the Levee act, prior to its amendment in 1909, provided, among other things, that "said commissioners may use money arising from the collection of assessments or coming into their hands, as such commissioners, for the purpose of compromising suits and controversies arising under this act, and in the employment of all necessary agents and attorneys in organizing said district, and for conducting other proceedings, in law or equity, for the same, and for the purpose of constructing or repairing or maintaining any

ditch, ditches, drains, levee or levees within said district, or outside of said district, necessary to the protection of the lands and complete drainage of the same within said district." A proviso follows, designating the method by which such money could be raised for the purposes specified. Section 38 of the Farm Drainage act (Smith's Stat. 1933, chap. 42, par. 121,) reads as follows: "The commissioners may use money belonging to the district for the purpose of compromising suits and controversies arising under this act, and in employment of all necessary agents and attorneys in the prosecution or defense of said operation, and to pay all necessary employees. Provided, the acts of the commissioners shall be uniform as to the rights of all persons and property." This section of the Farm Drainage act has not been previously construed by this court, but its analogy to section 37 of the Levee act, both before and after the amendment of 1909, is apparent, and under the cases cited, section 38 of the Farm Drainage act should, in our opinion, receive the same construction as to the limitation against levies for the purpose of paying antecedent debts.

Whether the levy of 1929 can be construed, as appellants say, to have been for the future payment of attorneys' fees and expenses is of no consequence here, since there is another reason why the levies of 1926 and 1929 for the purpose of paying these expenses cannot be sustained. No notice was given to the land owners in the district of the levy of the assessments. The Farm Drainage act, under which these levies were made, provides for the formation of the district, planning and doing work necessary to drain all lands in the district and to provide by special assessment the means of paying the cost of draining the lands and the expense incident thereto. After lands have been classified all assessments shall be on the basis of the classification adopted. The only assessments authorized without notice to the land owner, after the assessment to pay

for the cost of construction, are for interest and repairs. A levy to raise money for any purpose other than repairs and interest, as shown by sections 41 and 70 of the Farm Drainage act, must be after notice to the land owners. It is not contended that any notice of assessments of 1926 or 1929 was given, nor is it contended that these levies were for interest or repairs, but the certificates, on the contrary, specifically state that they are for the purpose of raising money to pay indebtedness due and accruing, to pay attorneys, commissioners and others, and to provide funds to enable the district to carry on pending litigation. These levies without notice to the property owners were illegal. (*Schwartz* v. *Big Lake Drainage District*, 307 Ill. 209; *People* v. *Brown*, 253 id. 578; *People* v. *Peebles, supra*.) It was not error on the part of the chancellor to enjoin the collection of these assessments as against appellees' property.

Appellants also urge that the decree is erroneous because it enjoins the payment of funds which have been voluntarily paid in but no part of which was paid in by appellees. Concerning this branch of the case, the decree enjoins the district and its officers from paying any warrants to commissioners or individuals and attorneys, (naming them,) all of whom are appellants, and enjoining the latter from collecting any money from warrants issued for services rendered prior to the filing of the supplemental bill on April 7, 1930. Appellees argue that the decree speaks from the date of filing the original and supplemental bills; that the original bill was filed before any of the assessment of 1926 was paid, and the supplemental bill was filed before any part of the 1929 assessment was paid; that all land owners had notice of the attack on the legality of these assessments, and that since the assessments were void, any money voluntarily paid into the treasury on them belongs to the district and can be paid out only on lawful warrants issued by the commissioners

in payment for services to be rendered the district. There is a statement in the record showing various sums that have been collected through voluntary payment under the assessments of 1926 and 1929 and the various assessments ostensibly made for repairs and interest, which, as we have seen, were not valid assessments. On these last named assessments appellees paid during the years 1923 to 1928 the sum of $597 for interest and $1211.64 for repairs. They made no payments, however, on the 1926 or 1929 levies for expenses. The decree has not enjoined the collection of the tax from anyone other than appellees. Appellees, because of their liability to maintain repairs of certain works in the district, are interested in the sum so illegally levied, voluntarily paid in and now on hand from assessments which were purported to be for repairs, and therefore the decree preventing the payment of any sums collected for repairs was a matter in which appellees have a personal interest, because the misappropriation of that fund might result in the levy of further charges against them for repairs. This is a basis of their right to relief in equity as tax-payers. The right of a tax-payer to maintain a bill to prevent the misapplication of public funds is based upon his equitable ownership in the funds and his liability to replenish the public treasury for the deficiency which would be caused by misapplication thereof. *Fergus* v. *Russel,* 270 Ill. 304.

As to the levies of 1926 and 1929 for expenses appellees are in a different situation. The record shows that of the 1926 levy $16,930.50 was voluntarily paid into the treasury of the district and of the 1929 levy $2149.78 had been voluntarily paid. As to those funds it cannot be said that appellees have any interest either because of having contributed to them or because their application to the purposes of paying expenses of the district might require them to replenish the treasury for such purposes, since the lands of the district are not liable to assessment for the payment of claims such as those of appellants, for which

no assessment had been previously made. While the decree has held, and we think properly, that an assessment may not be made for debts previously contracted, yet appellees have no interest in preventing its application to that purpose, for, as we have said, they could not be called upon, as tax-payers, to replenish any funds so used.

In this connection the record shows that prior to the entry of the decree herein, land owners of the district owning approximately 8500 acres thereof, filed, on leave, an intervening petition, in which they represented they had paid the greater portion of the levy of 1926 and a substantial part of that of 1929; that the appellees by their bill sought to give the petitioners a remedy which they, the petitioners, have not sought and do not care to assert, and they ask the court to permit the treasurer to pay out the funds so paid in by them on those levies, in the proportion that said moneys paid bears to the outstanding warrants, to the end that the indebtedness of the district might be reduced by the amounts of the payments made by them. We are of the opinion that as to the money voluntarily paid in on the 1926 and 1929 levies appellees are not in a position to control the expenditure of it. They have paid nothing in, and, we have said, are not interested in how it should be paid out. The petitioners, who ask that those funds be so paid out, do not say that they paid in all of the funds in the hands of the district. They say that they paid in the larger portion of the amount voluntarily paid in. In holding that the appellees do not have such interest in that fund as to enable them as tax-payers to control its expenditure, we are not to be understood as sanctioning the use of it for the purpose of paying the outstanding warrants issued to certain of the appellants. Should a land owner who voluntarily paid any part of the 1926 or 1929 assessments, and who did not join in the intervening petition, seek to enjoin the use of the funds paid in under those assessments a different question would

be presented. Such a question this court is not passing upon. Our holding on this point is limited to the proposition that appellees not having contributed to the funds derived from the 1926 and 1929 assessments, and not being affected, either presently or prospectively, by their application to the purpose for which they were levied, are not, as to those funds, in the position of tax-payers with the right to enjoin their use, as such right is defined by this court. *Fergus* v. *Russel, supra; Jones* v. *O'Connell,* 266 Ill. 443.

We are of the opinion that the chancellor erred in enjoining, on the application of the appellees, the expenditure of the funds voluntarily paid in under the 1926 and 1929 assessments, and to that extent the decree is reversed. In all other respects the decree is affirmed.

*Affirmed in part and reversed in part.*