THE PEOPLE *ex rel.* J. H. Gerbers *et al.*

*v.*

LEWIS SCHAFER *et al.*

*Opinion filed June 19, 1907.*

1. DRAINAGE—*when drainage district is a de facto organization.* A drainage district organized by the commissioners of highways of one town but which includes territory in another town is not a legal organization, but since the statute authorizes the creation of such a district as the one organized if the necessary facts exist, the organization is a *de facto* one, the existence of which cannot be attacked collaterally.

2. SAME—*when the legality of original organization cannot be questioned by quo warranto.* Where a drainage district having at least a *de facto* existence under some other law subsequently organizes under section 65 of the Levee act, the alleged illegality of the original organization of the district under such other law can not be shown in support of a *quo warranto* information to test the legality of the organization under the Levee act.

3. SAME—*when the fact that land owners have connected their drains with those of district is settled.* The fact that owners of

228—2

land lying outside of a drainage district have connected their drains with those of the district is settled by the judgment of the county court to that effect in a proceeding for annexation under section 58 of the Levee act, and such fact cannot be disputed in a subsequent *quo warranto* proceeding to test the legality of the organization of the district.

WRIT OF ERROR to the Circuit Court of Iroquois county; the Hon. DORRANCE DIBELL, Judge, presiding.

JOHN P. PALLISSARD, State's Attorney, J. W. KERN, and C. G. HIRSCHI, for plaintiffs in error.

KAY, SAUM & KAY, and SCHNEIDER & SCHNEIDER, for defendants in error.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

On October 7, 1905, in vacation, one of the judges of the circuit court of Iroquois county granted to the State's attorney of said county leave to file an information in the nature of a *quo warranto* to determine the legality of the organization of Artesia Township Drainage District No. 4, of said county. The information was filed on October 9, 1905, upon the relation of a number of owners of land within the district, and against Lewis Schafer, August Ernst and William A. Holz, acting as drainage commissioners of the district. Process was issued returnable to the November term, 1905, when the defendants appeared and moved for an extension of time to plead and that the order granting leave to file the information should be set aside and vacated. The motion to set aside and vacate the order granting leave was supported by an affidavit of the defendants setting forth various facts and conditions from which it was claimed that the court ought not to entertain the proceeding, and on June 4, 1906, the court granted the motion and vacated the order granting leave to file the information. On June 19, 1906, the defendants were ruled to show cause

why leave to file the information should not be granted, and it was ordered that the affidavit above referred to, of the defendants, should stand as their showing why leave should not be granted, and the relators should file their counter-showing by August 1, 1906, to which the defendants might reply by August 15, 1906. On December 7, 1906, the court heard the application for leave to file the information, and upon consideration of the affidavits of the respective parties denied the application and entered an order striking the information from the files and rendered judgment against the relators for costs. The relators excepted to the order and judgment, and sued out the writ of error in this case to bring the record here for review.

The facts upon which the decision and judgment of the court were based are as follows: Artesia, Ash Grove, Loda and Pigeon Grove are four of the townships of Iroquois county lying contiguous to each other. There is a large area of low lands in the same watershed and in need of a combined system of drainage for agricultural and sanitary purposes, lying in the south-eastern part of Artesia and extending into each of the other towns. About the year 1872 the owners of the swamp lands within this district, which embraced parts of the four towns, constructed ditches by their voluntary action for the drainage of the lands, and the owners constructed either tile or open drains from their respective lands into the ditches, so as to form a combined scheme of drainage for all of the lands. On June 10, 1902, some of the owners of said lands in the town of Artesia petitioned the commissioners of highways of that town for the formation of a drainage district under section 76 of the act to provide for drainage for agricultural and sanitary purposes, to include that part of the lands and ditches in Artesia and Ash Grove but not including the rest of the lands in the same system of drainage. On October 21, 1902, the commissioners of highways of Artesia made an order granting the petition and organized a drainage dis-

trict called Artesia Township Drainage District No. 4 of
Iroquois county, Illinois. The district included the lands in
Artesia and the main and branch ditches in that town and
Ash Grove. The commissioners spread an assessment on the
lands in the district and made a contract with a contractor
to construct the ditches in the district according to plans
made by an engineer and approved by the commissioners.
The contractor proceeded with the construction of the
ditches and a large amount of wet land was thereby re-
claimed. The district assumed to act under that organiza-
tion until October 22, 1904, when a petition was filed with
the town clerk of the town of Artesia praying that the ques-
tion of the organization of the district under the Levee act
should be submitted to the owners of lands in the district.
Section 65 of that act provides for the organization there-
under, as a drainage district, of any drainage district organ-
ized under any other law, upon the petition of one-fifth of
the adult owners of land in the district. The regularity of
the proceeding under that section to organize the district
under the Levee act is not questioned. The election was
called and the majority of the votes cast were for organi-
zation under the Levee act, and on November 21, 1904, the
district was organized, in accordance with the petition, un-
der the Levee act. The amount expended in constructing
ditches and drains in the district was about $15,000. On
December 3, 1904, the commissioners filed in the county
court the complaint provided for by section 58 of the Levee
act, charging that the relators had connected their lands and
ditches with the ditches and drains of the district; that
their lands were benefited by the work of the district, and
that by making such connections relators had made volun-
tary application to be included in the district. Relators
filed objections to annexing their lands to the district, but
on January 31, 1905, all of them except Fern A. Hoffman
withdrew their objections. The court found that the lands
of relators lay outside of the district; that they had their

natural drainage towards the drains and ditches of the district and that they had been connected therewith, and it was ordered that said lands be annexed to and included in the district. The commissioners then made three several attempts to assess the lands of the relators, and the relators resisted the assessments. Objections were sustained to each of the first two assessments, and the commissioners each time dismissed the assessment proceedings. The *quo warranto* suit having been begun, the last proceeding for an assessment has been continued and is still pending in the county court.

In the case of *People* v. *McDonald*, 208 Ill. 638, there was an attempt by the commissioners of highways of one town to organize a drainage district, when, as a matter of fact, the lands involved in the scheme of drainage, and that would be affected, extended into two towns. It was held that the commissioners of highways of one town have no legal authority to organize a district where the lands involved extend into two or more towns, and judgment of ouster against the commissioners was afterward affirmed. (*McDonald* v. *People*, 214 Ill. 83.) Under the facts of this case there was no lawful authority in the commissioners of highways of the town of Artesia to organize the drainage district as originally organized under the act to provide for drainage for agricultural and sanitary purposes. There was, however, in existence a statute authorizing the creation of a drainage district of the same character as the one that was organized, if the necessary facts existed. The power of the commissioners to organize the district depended upon the existence of facts not shown in the record of the proceeding as to the location and extent of the lands involved in the scheme of drainage. If the territory over which the owners of the adjoining lands had constructed ditches forming a continuous line or lines and branches had been confined to the town of Artesia the organization would have been legal. There was an attempted organization in

pursuance of the statute and exercise and user of the franchise of a drainage district. The user was under color of a regular legal organization, and the drainage district was therefore a *de facto* organization, the existence of which could not have been disputed collaterally. In a direct proceeding by information in the nature of a *quo warranto* the district and its commissioners might have been ousted, but nothing of the kind was done, and the district ceased to claim or exercise corporate power by virtue of that organization and became organized under another act. The attempt now is to question the corporate existence and the exercise of corporate powers of a drainage district under the Levee act on the ground that the former district was not lawfully organized.

The Levee act provides for the organization under that act of any district organized under any other act, upon compliance with certain conditions. Artesia Township Drainage District No. 4 was a *de facto* corporation exercising the powers of a drainage district in pursuance of an organization under another act, and its legal existence had not been questioned in any manner. We do not think the relators were entitled to dispute the legal organization of the district under the Levee act by going back to the original organization of the drainage district under another act to show that the *de facto* corporation was not legally organized. The district had an existence for all purposes so long as it was not questioned by a direct proceeding, and we are of the opinion that it is now a legal district by virtue of the organization under the Levee act.

Relators in their affidavit alleged that none of them had connected their drains with the ditches of the district after the first organization, but the question whether they had so connected their ditches as to make application to be annexed to the district was involved in the proceeding for annexation and was settled by the judgment of the county court annexing the lands. It must be taken as conclusively set-

tled that the relators did connect their lands with the ditches of the district and came within the terms of the statute authorizing the annexation. The question to what extent the relators' lands can be. assessed to help pay pre-existing obligations of the district is to be determined in a different proceeding.

The court did not err in refusing to give judgment by default for want of a plea, both because of the motion to vacate the order and because of the motions for further time to plead.

The judgment is affirmed.

*Judgment affirmed.*