(No. 11454.—Judgment affirmed.)

THE PEOPLE *ex rel.* Claude L. King, County Collector, Plaintiff in Error, *vs.* CAROLINE FULTON *et al.* Defendants in Error.

*Opinion filed October 23, 1917.*

1. DRAINAGE—*organization of lands in three towns into a union district may be de facto.* A union drainage district which includes lands in three towns is not a legal organization, but, since the Farm Drainage act authorizes the creation of a special district in three or more townships when the necessary facts exist, the organization is a *de facto* one, the existence of which cannot be attacked collaterally.

2. SAME—*an assessment allowing credits for payments under previous invalid assessment is void.* Where commissioners levy an assessment and contract for the improvement but abandon the work because the lands were not properly classified, a new assessment after the lands are legally classified is void where credits are allowed by the commissioners, under sections 22 and 26 of the Farm Drainage act, for payments under the previous illegal assessment, as said sections apply only to the purchase of an old ditch from the owners.

3. SAME—*what objection may be made on application for judgment and order of sale.* An objection that a farm drainage assessment is void because the commissioners have allowed credits for payments made by certain land owners on a previous illegal assessment may be made on application for judgment and order of sale notwithstanding the provision of section 27 of the Farm Drainage act for an appeal, as the question to be presented by such appeal is limited to the point whether the assessment exceeds the benefits.

WRIT OF ERROR to the County Court of Ford county; the Hon. M. L. McQUISTON, Judge, presiding.

DOBBINS & DOBBINS, for plaintiff in error.

M. H. CLOUD, for defendants in error.

Mr. JUSTICE COOKE delivered the opinion of the court:

The county collector of Ford county made application in the county court for judgment and order of sale against the lands of defendants in error for delinquent drainage

assessments levied by Union Drainage District No. 1 of the towns of Mona and Pella, in the county of Ford, and the town of Sullivan, in the county of Livingston. The court sustained the objections interposed by defendants in error and denied judgment. This writ of error was sued out to review that order.

Union Drainage District No. 1 was attempted to be organized in 1884 as a union drainage district under the Farm Drainage act. Since that time it has been a going district and various improvements have been made to accomplish the purpose of its organization. At the time the district was organized a ditch was in existence which had been constructed by the various land owners, and this ditch was taken over and the owners of the same were given credit, under the statute, for its value upon their assessments. It is contended that as the district is composed of lands situated in three different townships and was organized and pretends to be operating as a union district it is neither a *de jure* nor a *de facto* union district. Plaintiff in error concedes that the district is a *de facto* special district, and bases his contention that it is neither a *de facto* nor a *de jure* union district upon the ground that it is only when lands lie in two townships in the same or different counties that they may be organized into a union district. The Farm Drainage act provides that when the proposed district is composed of lands in three or more townships it is to be known as a special drainage district, and the procedure for making assessments is wholly different from that provided for union districts, which was followed in this case. The statute provides for the organization of a union drainage district. When territory is organized into a union district which includes lands in three towns it is not a legal organization, but since the statute authorizes the creation of such a district when the necessary facts exist the organization is a *de facto* one, the existence of which cannot be attacked collaterally. *People* v. *Schafer,* 228 Ill. 17.

In the year 1914 the commissioners determined to clean out various ditches in the district. They advertised for bids and let the contract for the work. Thereafter they attempted to make a levy for $6800 to pay for the work contracted for. No proper classification of the lands of the district had ever been made. In 1885 a classification was made in which the lands were divided into three classes, designated as class 1, class 2 and class 3. When the levy was attempted to be made in 1914 the clerk made out a special assessment roll, which was signed by the commissioners, in which it was attempted to assess the lands of the district under the classification as made in 1885. All the land owners of the district paid this tax without objection except Henry McDermott and Caroline Fulton and her children. The contractor had practically completed the work prior to the time McDermott and Mrs. Fulton objected to their taxes. The commissioners having been advised that no valid assessment had been made against the lands of the district and that the objections would be sustained, the construction work was stopped. The contractor up to this time had been paid $6170 for the work done. The commissioners then adopted a resolution providing for the same improvement which they had authorized to be made in 1914 and in addition thereto the construction of three laterals running to the main ditch. In the resolution the cost of the work was estimated at $8960. After reciting that this amount was necessary in order to furnish an adequate system of drainage for the district, the resolution recites that it appeared to the commissioners that the main ditch, as shown on the plans furnished by the engineer, had been in part previously constructed for the purpose of draining the lands to be affected by the proposed work; that such portion of the work had been done by the owners of the lands in the district by voluntary contributions, and that the commissioners having determined that it was their duty to allow such owners proper credit, and having determined that

280 — 27

such work could be advantageously utilized, and having estimated the total value of such old ditch so constructed by voluntary contributions at $6170, that amount was directed to be credited to the said several owners, proportionately, on their assessments when made, in accordance with sections 22 and 26 of the Farm Drainage act, leaving the balance of the amount assessed to be used for the completion of the work laid out. The resolution provided that a new classification should be made of all the lands in the district. The commissioners then proceeded to classify the lands as required by law. After the classification was adopted Henry McDermott died and his heirs have succeeded to his title. The commissioners having adopted and filed their assessment roll, the defendants in error refused to pay the assessments made against their lands, and this application was made for judgment and order of sale.

The lands owned by Caroline Fulton and her children were assessed $303.32 and were allowed no credit, and the McDermott land was assessed $646.64 and allowed no credit. The land of John and Maggie Blackmore was assessed $16.80 and the land of William Kneale was assessed $72.74 above credits allowed. The objections sustained were, in substance, that the assessment to the extent of $6170 was fraudulently levied to pay back to certain land owners illegal assessments which they had theretofore paid for construction work in the district and was void, and that credits given in the special assessment roll to certain of the lands were illegal.

It is contended on the part of the district that the commissioners were authorized, under sections 22 and 26 of the Farm Drainage act, to allow the owners proper credit for the estimated value of an old ditch where it appeared that the old ditch had been constructed for the purpose of draining any land to be affected by the proposed work and such ditch can be advantageously utilized. The facts in this case do not bring it within the provisions of these sec-

tions of the statute. This ditch was not owned by any one or more of the land owners of the district but was the property of the district itself. The old ditch, which had existed along the line of this ditch at the time of the organization of the district, had been acquired and credit given for its value in the manner provided by this statute. At the time the commissioners attempted to levy the special assessment in 1914 this ditch was the property of the district. The district owned it when the contract was let for its improvement in that year and owned it when the improvement was made. The action of the commissioners in pretending to treat this as an old ditch and as the property of the land owners, and thus attempting to bring it within these provisions of the statute, was simply a device to enable them to levy an assessment for the purpose of repaying those who had previously paid the illegal assessment and compelling the land owners who had refused to pay the previous assessment to pay for work which had already been done. The commissioners could not purchase a ditch which the district already owned and had improved. The assessment was clearly void.

It is insisted that defendants in error cannot raise this question in these proceedings as their remedy was by appeal under section 27 of the Farm Drainage act. Section 27 provides that any person against whose land a tax has been levied may, within ten days after the tax list has been deposited with the clerk of the drainage district, appeal to the county court by filing his bond in double the amount of the tax appealed from in the county clerk's office, but the appeal shall be upon the ground, only, that such tax is a greater amount than the benefits to accrue to the land in question by the proposed drainage. Defendants in error question the constitutionality of this section, but as we are of the opinion that its provisions do not apply in this case it will not be necessary to pass upon that question. Defendants in error are making no contentions here on the

question of benefits or that the amounts assessed are greater than the benefits to accrue to their lands. They are objecting that the assessment is void for the reason that it was levied, not to pay for work proposed to be done, but to pay for work which had already been completed. The appeal provided for by section 27 of the Farm Drainage act being confined to the sole question that the tax was greater in amount than the benefit to accrue to the lands, the question here presented could not have been raised had such appeal been taken. This is the first opportunity defendants in error have had to raise this question.

It is finally contended on the part of plaintiff in error that the judgment in any event is erroneous, as the court should have entered judgment against the lands of defendants in error for that proportion of the assessment represented by the amount proposed to be expended for the construction of new work. The assessment attempted to be made in 1914 was upon an entirely different classification from that made in this case. The new classification made radical changes. In the second assessment levied the lands of Mrs. Fulton and her children and the lands of the McDermott heirs were the only ones not allowed any credits. All the other land owners of the district having paid the assessment of 1914 were given credit upon the new assessment for the amounts so paid. In some instances this resulted in a small sum being assessed against certain of the lands, and in many instances resulted in a balance due the land owner from the district. Under this state of affairs it would be difficult for the court to determine what proportion of the assessments made against the lands of defendants in error should be collected for the proposed new work. It could not be done by computing the cost of the new work proposed to be done to be thirty-one per cent of the whole assessment, as suggested by plaintiff in error. By this method the assessment of the Blackmores would be increased $17.01 and the assessment of Kneale would be

reduced by $18.38. Appreciating this difficulty, plaintiff in error suggests that the credits allowed the Blackmores and Kneale should be ignored. The portion of the assessment that might have been legally levied against the lands of defendants in error is so mingled and interwoven with the portion illegally levied as to render the whole assessment void.

The objections were properly sustained, and the judgment of the county court is affirmed.

*Judgment affirmed.*