(No. 13024.—Judgment reversed.)

THE PEOPLE ex rel. Preston R. Elliott, County Collector, Appellee, vs. H. M. PEEPLES et al. Appellants.

*Opinion filed February 18, 1920.*

1. DRAINAGE—*when commissioners may improve ditches constructed by land owners.* Under section 41 of the Farm Drainage act, where a portion of the lands in a drainage district do not receive the benefit contemplated by the organization of the district the commissioners may improve ditches constructed on said lands by the owners if necessary to give the lands the benefit originally contemplated, and if sufficient funds are not on hand the commissioners may make a new levy for such work.

2. SAME—*what is original work and what is repair work on a ditch.* The clearing out of drifts and fills in a drainage ditch is repair work but the enlarging of the ditch is original work.

3. SAME—*certificate of levy for repairs and for original work should state amount required for each purpose.* Levies under sections 41, 62 and 63 of the Farm Drainage act are for the construction of the original improvement so as to accomplish the contemplated benefits and should be made in the manner provided by section 62, but a levy for repairs should be made as provided by section 70, and a certificate of levy for a lump sum which shows that part is for repairs and part for original work, without fixing the amount for each, does not justify an extension of the tax.

4. SAME—*tax-payer is entitled to know purpose and amount of tax.* The tax-payer has a right to know for what purpose his property is to be taxed and the amount of the tax for such purpose.

APPEAL from the County Court of Gallatin county; the Hon. W. S. SANDERS, Judge, presiding.

BARTLEY & BARTLEY, and W. R. McKERNON, for appellants.

W. F. SCOTT, and ROEDEL & ROEDEL, (GEORGE W. PILLOW, of counsel,) for appellee.

Mr. CHIEF JUSTICE DUNN delivered the opinion of the court:

The county court of Gallatin county, on the application of the county collector, rendered judgment against certain

lands for a special assessment made by the Cypress Special Drainage District, and the owners have appealed.

The district includes 11,200 acres. It was organized under the Farm Drainage act in 1902, and the improvements contemplated, consisting of one main and three lateral ditches, were made. In 1912 two land owners constructed ditches which were not a part of the drainage district, called the Dobell ditch and the Doherty ditch, which united and emptied into lateral No. 2 of the drainage district. On December 14, 1916, the commissioners, by a resolution reciting that the lands in which were the Dobell and Doherty ditches, comprising a territory of about 1500 acres, have not been and are not drained or protected as originally contemplated by the organization of the district although such lands are all within the district and were classified and have regularly paid all assessments made against them, and that the owners of those lands are demanding that the commissioners furnish more complete drainage for that territory and do the work and bear the expense thereof out of the funds of the district, determined that the district should furnish more complete drainage to such undrained territory and should do the work and bear the expense of such work out of its corporate funds, and should "take over, assume and bind itself to furnish to said undrained and unprotected territory more complete drainage, as originally contemplated by the organization of said district." Both the Dobell and Doherty ditches were described in the resolution. It was found that the Dobell ditch needed to be cut deeper and wider; that both ditches were proper to be taken over, cleaned out and enlarged at the expense of the district, and that in order to properly drain the territory served by the two ditches it was necessary to remove 14,752 cubic yards of earth. A special tax of $1500 was levied against the lands of the district for this purpose as a part of the total levy of $2500.53. In May, 1918, the district employed

Charles Bastnagle to clean out the fills and drifts in lateral No. 1 and to connect the Dobell ditch with it, and by December 1, 1918, Bastnagle, in pursuance of his contract, had dug a ditch about a mile and a quarter long connecting the Dobell ditch with the lateral. The funds of the district being exhausted he stopped work. On December 6, 1918, the commissioners adopted the following resolution, which was filed with the county clerk and was the authority upon which the tax in question was extended:

"At an adjourned meeting of the drainage commissioners of Cypress Special Drainage District, etc., the matter of levying an additional assessment to enable the commissioners to clear out the drift and fills and to enlarge what is known as Dobell ditch or lateral, in said district, also to clear out the drift and fills and enlarge all that part of lateral No. 1 in said drainage district which is located in the southeast quarter in section 1, in township 9, range 9, Gallatin county, Illinois, so as to connect that part of lateral No. 1 with the Dobell ditch or lateral, in said district, was taken up and fully discussed, and said commissioners having had survey and estimate of the cost of said work necessary to be done, it is found that the sum of $5200 is necessary and will have to be raised by an additional or special tax upon the lands in said district, and thereupon the following resolution was introduced, read, approved and passed:

"Whereas, the assessment or tax heretofore levied on the lands and property in Cypress Special Drainage District, in the county of Gallatin and State of Illinois, is found inadequate to enable the commissioners to clear out the drifts and fills and to enlarge what is known as Dobell ditch or lateral, in said district, and that part of lateral No. 1 which lies in the southeast quarter of section 1, in township 9, range 9, in said district, and that a deficit exists to properly perform said work in the amount or sum of $5200;

"Therefore we hereby certify that we require the said sum of $5200 to be levied as a special tax levy or assessment for drainage purposes to do said work on the lands and property benefited in said Cypress Special Drainage District, which said assessment of $5200 shall be levied and collected with and as taxes of the year 1918.

"Given under our hands this 6th day of December, A. D. 1918.
                              D. A. Logan,
                              J. E. Logsdon,
                              Walter Drone,
                                  *Drainage Comrs.*"

It is insisted by the appellants that the commissioners had no authority to take over the Dobell and Doherty ditches, which were constructed by the owners of the land on which they were, and to assume on the part of the district the burden of their maintenance.

Section 41 of the Farm Drainage act authorizes the commissioners, if they find that by reason of error in locating or constructing the ditches, or any of them, or from any other causes, the lands of the district are not drained or protected as contemplated or some of them receive partial or no benefit, to use the corporate funds of the district to carry out the original purpose, to the end that all the lands, so far as practicable, shall receive their proper and equal benefits as contemplated when the lands were classified, and provides that if sufficient funds are not on hand the commissioners shall make a new tax levy. The theory on which a drainage improvement is constructed and the cost assessed upon the lands of the district is that all the lands assessed are benefited as much as the assessment amounts to, or more. The purpose of the classification of the land is to fix the proportionate share of the cost which each tract shall pay. It may happen that it is discovered, when the work is completed, that from some error of location or construction, or otherwise, some part of the land has not received the benefit which was expected, and the object of the provision which has just been mentioned, in section 41, is to enable the commissioners to remedy this failure and use the funds of the district for that purpose. The commissioners found that the condition of facts required by the statute for this purpose existed and that territory of about 1500 acres of the district had not been drained or protected in the manner contemplated by the organization of the district. If the lands adjacent to the Dobell ditch and the Doherty ditch did not receive the benefits which it was supposed they would receive by the plan contemplated at the organization of the district and a con-

struction of those ditches was necessary to enable them to receive such benefits, such construction was work within the scope of the commissioners' authority. If they had constructed these ditches it would have been their duty to maintain them. Although they were constructed by the land owners at their own expense, it was nevertheless the duty of the commissioners thereafter to maintain them if their construction was necessary to give to the lands the benefit contemplated in the original organization of the district and was a work which the commissioners should themselves have performed. The resolution on its face shows that the assessment was made both for original work and for repairs. It is to enable the commissioners to clear out the drifts and fills and to enlarge the Dobell ditch and that part of lateral No. 1 which lies in the southeast quarter of section 1. The clearing out of the drifts and fills is repair work; the enlarging of the two ditches is not repair work but is original work. *People* v. *Brown,* 253 Ill. 578.

Section 62 of the Farm Drainage act authorizes the commissioners to levy an assessment for the construction of the work proposed to be done. If the assessment levied proves inadequate, section 63 authorizes the commissioners to make such additional levy or levies as may be necessary to complete the proposed work. After the work is completed, if the commissioners find that the lands are not drained or protected, section 41 authorizes them to use the corporate funds of the district to carry out the original purpose, and, if necessary, to make a new tax levy for that purpose. All these sections are concerned with the construction of the original improvement so as to accomplish the contemplated benefits, and the levies are to be made in the manner provided by section 62. The commissioners make and sign the certificate required by that section, to be recorded in the drainage record by the clerk, who computes and apportions the amount upon the several tracts in the district according to the classification, and the commission-

ers then make out and sign a tax list to be filed with the clerk. Section 70 authorizes an annual levy to be made for the payment of interest, the making of repairs and for deficiencies in the payment of interest and repairs. It requires the commissioners, on or before December 1 of each year, to file with the county clerk a statement concerning the indebtedness of the district on notes or bonds, showing, among other things, the amount necessary to be levied for the payment of interest for the ensuing year, the amount, if any, necessary to be levied to keep the work in repair for the ensuing year, and the amount of any deficiency in the payment of interest previously accrued or for the payment for repairs made, and the clerk is required to compute the tax required to raise these amounts and extend it against the respective tracts of land in the district. The act provides two methods of levying assessments: one providing funds for the work of construction; the other providing funds to meet the principal and interest of the obligations of the district for money borrowed and to pay for repairs to be made and past-due interest and indebtedness for repairs made. The evidence shows that the district was not in debt. The certificate shows on its face that a part of the $5200 to be levied was for repairs but does not state the amount required for that purpose, as required by section 70; neither does it state the amount required for the original work of the enlarging of the ditches, as required by section 62. Each of these certificates is required to state the amounts to be levied for the respective purposes. They are intended for the protection of the tax-payer and are mandatory. The tax-payer has a right to be informed for what purpose his property is to be taxed and the amount of such tax. *People* v. *Glenn,* 207 Ill. 50.

The certificate did not justify the extension of the tax. The judgment of the county court will be reversed.

*Judgment reversed.*