(No. 13134.—Reversed and remanded.)

THE PEOPLE *ex rel.* E. A. Ormsby, County Collector, Appellee, *vs.* J. W. GIBSON *et al.* Appellants.

*Opinion filed April 21, 1920—Rehearing denied June 2, 1920.*

1. DRAINAGE—*record of commissioners is prima facie proof that meeting for adopting classification was held within district.* The record of the drainage commissioners showing that the meeting for the adoption of the classification of lands was held within the boundaries of the district is *prima facie* proof of that fact but is subject to rebuttal by oral proof.

2. SAME—*when place of meeting for adopting classification is definitely fixed.* The provision of the Farm Drainage act requiring the meeting to hear objections to the classification of lands to be held within the district and that due notice of the time and place be given the land owners, does not mean that the place of meeting be described as completely as is required in a description of land, but only that the place be so definitely fixed that the parties in interest may know where to go to attend such meeting.

3. SAME—*what is a substantial compliance with statute requiring meeting to be held within boundaries of district.* The statute requiring the meeting to hear objections to the classification to be held within the district is substantially complied with where the notice fixes the place "at the Maple Grove school house, within the boundaries of said drainage district," although said school house is just across the line and outside the district, and where the meeting is first opened outside the building and within the district, after which the discussions are carried on by unanimous consent within the school house and the final adoption of the classification takes place outside of the building and within the district.

4. SAME—*what is not repairing ditches under section 41 of the Farm Drainage act.* Where the original ditches in a farm drainage district serve their purpose for a number of years and become filled up, the commissioners are authorized, under section 41 of the Farm Drainage act, to clean out and restore the ditches to their original condition; but an additional assessment without a new classification and without notice is not justified under said section, where the report of the commissioners shows that the extra expenditure is to widen the ditches and to acquire a new right of way.

APPEAL from the County Court of Cumberland county; the Hon. A. F. BUSSARD, Judge, presiding.

Dobbins & Dobbins, J. L. McLaughlin, and Elliott Billman, for appellants.

Glenn Ratcliff, State's Attorney, Edward C. Craig, Donald B. Craig, Fred H. Kelly, and James C. Van-Meter, for appellee.

Mr. Justice Stone delivered the opinion of the court:

The commissioners of Neoga Drainage District No. 1 in Cumberland county levied an assessment at a meeting of the commissioners on February 22, 1919, of $9000 against the lands of the district for the purpose there stated of making certain repairs to the ditches and drains in the district, and prepared and filed with the town clerk for the town of Neoga their assessment roll spreading the levy. This levy was spread in accordance with the classification of the property in the district made at the meeting of the commissioners on May 29, 1909, when the district was originally organized. Numerous objections to this last assessment were filed by the appellants, but in the issues raised in this court by assignment of errors these may be grouped under the following contentions: First, the assessment for which this judgment is asked is invalid for the reason that the classification of the property in the district made at the time of the organization, in 1909, was void, and said classification was void for the reason that it was made and objections heard thereon at a meeting held outside of the drainage district, at the Maple Grove school house; and second, the assessment is invalid for the reason that the commissioners exceeded the authority given them by section 41 of the Farm Drainage act. The objections were overruled and judgment was entered by the county court of said county against the lands of all the appellants, except the public highways of the town of Neoga. No order was entered by the court in

the matter of the assessment made against the public highways, nor was such assessment returned delinquent.

This district was organized in the spring of 1909 under the Farm Drainage act of 1885, and it comprises approximately 1600 acres of land. By the original plans an open ditch was to be cut through the district a distance of approximately one and three-quarters miles, with one small lateral ditch extending along the side of the highway at the north terminal of the main ditch. The assessment in question here is the assessment made for the repair of said ditches and drains, the commissioners finding that the ditches and drains had become filled with silt, weeds and bushes. The district as it was originally planned included a small plot of ground used for school purposes on the east border of the district. On the first hearing upon the petition to organize the district the plot of ground on which the school building is situated was excluded from the district, so that the east line of the district detours around said plot and bounds it upon the south, west and north. This school house is commonly known as the Maple Grove school house. The building is within 80 feet of the district in the directions south, west and north from the building. In other words, the school house site is set in the east side of the district, so that it is bounded by the district on all sides but the east side.

At a meeting of the commissioners held on the first day of May, 1909, after the organization of the district, the classification of the property of the district was filed with the town clerk of said town as *ex-officio* clerk of the drainage district, and the commissioners fixed a time and place for a meeting of the land owners for the purpose of hearing objections to the classification of said lands and directed that notice issue of the fixing of the time and place of that meeting. The records of the commissioners show that this meeting was directed to be held "at the Maple Grove school house, within the boundaries of the said drain-

age district, at nine o'clock A. M., May 29, 1909." Notice was given by the clerk in accordance with the provisions of the statute and a meeting was held at that time. It is this meeting which appellants contend was not held within the district. The records of the commissioners show the meeting to have been held within the district. This is *prima facie* proof, which may be rebutted, however, by oral proof. *People* v. *Graham,* 280 Ill. 303.

The evidence is conflicting concerning just what occurred at the meeting where the classification for the original assessment was made. Appellants contend that it was held outside the district, and since the assessment in question here is levied on the classification adopted at that meeting the assessment is void because the original classification is void. After reading the record we are of the opinion that the weight of the evidence shows the following facts: The commissioners, with their counsel and practically all of the land owners of the district, met at the school house on the day and at the time named in the notice, which called said meeting "at the Maple Grove school house, within the boundaries of the said drainage district." It was announced that the meeting had been called for that place within the boundaries of the district and would be held there, but that if it was so desired the matter could be first talked over and the objections offered in the school house, where it was more comfortable, owing to the fact that the weather was cold and raw. Those present by unanimous consent went into the school house, where the matter was discussed and objections to the classification of the lands were offered. After the objections were presented and discussed, the commissioners, with others, retired to the territory within the district and held a formal meeting, passed upon the objections to the classification, entered their order with reference to the objections made, and there adopted the classification. The commissioners and the clerk then signed up the minutes of the meeting. Some of the land owners and objectors

went with the commissioners to witness the formal meeting, which was held within 100 feet of the school house, just over the line, inside the district. ·

The Farm Drainage act requires that the meeting of the commissioners be held within the district and that due notice of the time and place be given the land owners in order that they may have an opportunity to attend. (*People* v. *Carr,* 231 Ill. 502.) The record shows that due notice was given and that the land owners had an opportunity to attend, as contemplated by the act requiring notice. As the school house was not within the district but adjacent to the east boundary thereof, the language, "at the Maple Grove school house, within the boundaries of the said drainage district," may be reasonably construed to mean at a point within the district adjacent to the school house. It is not required that the place of meeting, in a case of this kind, be so fixed in such notice that the exact point may be ascertained by an engineer, as is required in the description of land, but that it shall be so definitely fixed that parties in interest receiving notice may know where to go for the purpose of attending such meeting. Here all objectors had an opportunity to be heard and all presented objections who desired to do so. The meeting was called for a place within the district, and the action and decision of the commissioners were had within the district at the time and place specified in the notice. To say that because those present, as a matter of comfort, went into the school house to discuss objections to the classification, therefore there was not a substantial compliance with the statute regarding the place of meeting, would be putting a strained and unwarranted construction on their acts. We are of the opinion that there was a substantial compliance with the statute requiring that the meeting be held within the district and that the classification there adopted was a legal classification.

The second objection of appellants, that the assessment here levied is void for the reason that the commissioners ex-

ceeded the authority given them by section 41 of the act, presents a more serious difficulty. That section reads:

"Sec. 41. After the completion of the work the commissioners shall thereafter keep the same in repair, and if they find by reason of error in locating or constructing the ditches, or any of them, or from any other causes the lands of the district are not drained or protected as contemplated, or some of them receive partial or no benefit, they shall use the corporate funds of the district to carry out the original purpose to the end that all the lands, so far as practicable, shall receive their proper and equal benefits as contemplated when the lands were classified," etc.

It is objected by appellants that the improvement for which this tax was levied was not a repair of the original ditches but the work contemplated new and different ditches; that there was originally no error in locating or constructing the ditches, or any of them, but that the district was properly drained and protected, as contemplated by the original improvement, by the ditches and drains as originally constructed until the ditches became filled in, and that none of the lands received partial or no benefit, and that the commissioners therefore had no authority, under section 41, to make this improvement. To this appellee replies that there is no evidence in the record that such is the case. The minutes of the meeting of the drainage commissioners held February 22, 1919, at which meeting it was determined that the work should be done, show that the commissioners found that the main ditch and branch "A" had become filled with weeds, grass and willows, so that in that condition they were not sufficient and adequate to carry off the waters of the district; that since the construction of the original ditches practically no work had been done on the open ditch or branches thereof and that they were out of repair. They also found that "if the said main open ditch and said branch 'A' be cleaned out and restored to the condition they were

in when originally constructed they will furnish ample and sufficient outlet for the waters in the drainage district."

It appears to be conceded from the record and the arguments of counsel for both sides that the ditches as originally constructed were in every way adequate to properly drain the district, and it is objected that this proposed work is not merely cleaning out the ditches, as was found by the commissioners to be the only thing necessary in order to carry off the waters as was originally intended, but that the proposition is to widen the ditches and deepen them, to change their course and to acquire more right of way,—and this in spite of the fact that the commissioners have found that if the ditches are placed in their original condition they will carry off all the waters of the district. It is evident from an examination of the record that the work proposed to be done is not merely the cleaning out of the original ditches. The report and specifications of the original engineer were not used but a new and different report was adopted calling for new and different dimensions of the ditches. By the proposed plan of the engineer adopted by the commissioners at their meeting on February 22, 1919, different ditches are provided for. Under the original specifications the depth of the main ditch is 3.6 feet at station "o;" 4 feet at station 10; 4.1 feet at station 20; 5.4 feet at station 30; 2.6 feet at station 40; 8 feet at station 50; 7 feet at station 60; 7.4 feet at station 70; 5 feet at station 80; 5.4 feet at station 90; 5 feet at station 100; 4.6 feet at station 110. Under the proposed plan of February 22, 1919, the main ditch is to have a depth of 6.6 feet at station "o;" 7.2 feet at station 10; 6.7 feet at station 20; 6.7 feet at station 30; 9.6 feet at station 40; 10.8 feet at station 50; 10.2 feet at station 60; 10 feet at station 70; 8.3 feet at station 80; 6.8 feet at station 90; 7.5 feet at station 100; 6.5 feet at station 110. Branch "A" under the original specifications was 3.1 feet in depth at station "o" and 3.8 feet at station 13, while the proposed depth was to

be 6.3 feet at both stations "o" and 13. Under the original specifications the main ditch was to have a width at the bottom of 1 foot from station "o" to station 13, 6 feet from station 13 to station 39, 8 feet from station 39 to station 65, and 10 feet from station 65 to station 109. Under the proposed plan the width at the bottom of the main ditch is to be 1 foot from station "o" to station 13, 8 feet from stations 13 and 20 to station 66, and 10 feet from station 66 to station 100. Branch "A" in the original specifications has a bottom width of 1 foot while in the proposed ditch the bottom is to have a width of 4 feet. In both the original and proposed new ditches the side slope is to be a one-to-one slope. It will be observed that for a distance of 2600 feet the main ditch is to be widened at the bottom to the extent of 2 feet from the original dimensions, and that branch "A" is to be widened at the bottom to the extent of 3 feet throughout its entire length. These facts, together with the increased depth proposed in the new ditches and the fact that the side slope in each case is to be a one-to-one slope, show that both the main ditch and branch "A" must be considerably wider at the surface. The new plan also proposes acquiring an additional right of way with a width of 20 feet for a distance of one-fourth of a mile. Obviously, if, as shown by the report of the commissioners, the present ditches, when cleaned out and restored to their original condition, will meet the requirements and original purpose and will drain the district as was originally contemplated, there can be no reason for this extra expenditure and no authority on the part of the commissioners to do that work under section 41.

In support of his contention that the commissioners were authorized to do this work under section 41 appellee has cited the cases of *People* v. *Chapman,* 127 Ill. 387, *Reynolds* v. *Milk Grove Special Drainage District,* 134 id. 268, *Carr* v. *People,* 224 id. 160, and *People* v. *Sullivan,* 238 id. 386. In *People* v. *Chapman* the question involved was whether

or not the property owner who had been notified of the meeting for fixing the classification in the original improve- ment was entitled to notice of a second assessment thereafter levied for the completion of the original improvement with changes made therein. This case does not in any way attempt to construe the powers of the commissioners under section 41, under the circumstances here shown to exist. In *Reynolds* v. *Milk Grove Special Drainage District* it was sought to enjoin the collection of the assessment and the payment of certain bonds. It appears the drainage district in that case adopted a certain plan, consisting of a single drain, and levied an assessment therefor. Before the work on this main ditch was completed the commissioners located additional lateral ditches and made a second special assessment to cover the cost of the same, which was made on the same classification. This was made without notice, and it was claimed that the commissioners had no right to make these lateral ditches and no power to make an assessment to pay for the same. It was there held, however, that section 41 of the act gave the commissioners power, even after the original plan had been carried out, to make changes in them, after becoming convinced that the first system adopted would not accomplish the purposes originally intended, and that under section 41 they had the right, under such circumstances, to change their plans. It will be noted that that case does not go to the question whether the commissioners have the right to construct ditches not necessary to carry out the proper drainage of the district. In *Carr* v. *People* objections were raised to the classification roll adopted by the county court and to the legality of the organization of the drainage district. These objections arose on the original assessment in the district, and that case nowhere touches upon or attempts to construe the powers of the commissioners under section 41. In *People* v. *Sullivan* a district had been organized and the ditches constructed before the tax in controversy was levied. The com-

missioners adopted a resolution to the effect that it was necessary to clean out portions of two of the three ditches in the district at certain points and to extend the other one a distance of about 800 feet. A tax was extended against the lands according to the classification previously made by the commissioners of the district. It was objected on an application for sale of the lands for delinquent taxes that the assessment provided for the construction of a ditch, which could only be done by organizing a sub-district. It was held that under section 41 of the act no notice is necessary or required to be given by the commissioners to the land owners and no new classification is required but that the tax must be extended on the classification previously adopted. It was also held that it was not required that a sub-district be organized in order to extend the district 800 feet from its upper end. It will be noted that in that case there was a finding that it was necessary for the proper drainage of the district to extend one of the ditches; that the ditches originally constructed were not adequate to carry out the purposes of proper drainage of the district.

In *Langan* v. *Milks Grove Drainage District,* 239 Ill. 430, *mandamus* was sought to compel the commissioners of the drainage district to deepen and widen the main ditches and enlarge the outlet of the district, for the reason that the ditches as originally planned and constructed did not properly drain the land. It was there held that it was the duty of the commissioners, where it had become evident that the system or plan of drainage adopted would not afford an outlet of sufficient capacity to drain the lands of the district, to proceed to so change or construct the drains as to perform that service, and that there was no discretion vested in the commissioners but that such duty was imperative. To the same effect is *Peotone Drainage District* v. *Adams,* 163 Ill. 428.

There can be no doubt as to the correctness of this rule. The distinction between the cases cited and the case at bar

lies in the fact that the ditches and plans there were not adequate to properly drain the district, while in the instant case it is shown by the records of the commissioners that if the ditches be put in their original condition they are adequate to meet all requirements. There is not only no duty under section 41 to construct such ditches but there is likewise no authority under that section for such construction. Where necessary to carry out the original purpose and adequately and properly drain the district, section 41 gives complete power to the commissioners to construct drains and ditches for that purpose and authorizes them to levy a tax therefor without a new classification and without notice, but it does not follow because this is true that they are empowered to levy a tax for work which their own report shows will not be necessary. Under the facts in this case the commissioners would have power, under section 41, to do all work necessary to clean out and repair the ditches and to put them in their original condition without a new classification and without notice. Had ditches of the additional size and depth proposed been found necessary to properly drain the district as was originally contemplated, there can be no doubt that the commissioners would have had power to construct them, but instead of such being the fact the exact contrary is true, as shown by their own report. These ditches and drains had served the purpose of draining the district for ten years, and the only objection to their sufficiency to do so arose, as the records of the commissioners show, after the ditches had become filled and because of such filling. The commissioners here attempted to go beyond the power granted by section 41. This they cannot do. To say that the commissioners have authority to make new ditches and drains without a new classification and without notice, in cases where such are not necessary to carry out the original purposes of the district, would be placing in their hands a taxing power not contemplated by the statute.

The commissioners being without authority, under the circumstances of this case, to make the proposed improvement in the manner proposed, it follows that the assessment levied against the lands of the appellants is invalid.

The judgment of the county court is therefore reversed and the cause remanded, with directions to sustain the objections of the appellants under the second group herein referred to.  *Reversed and remanded, with directions.*