(No. 14876.—Decree affirmed.)

Link Schwartz *et al.* Appellees, *vs.* The Commissioners of Big Lake Special Drainage District, Appellants.

*Opinion filed February 21, 1923—Rehearing denied April 5, 1923.*

1. Drainage—*no notice is required for levying assessment for repair work.* No notice is required to be given the land owners for levying an assessment for repair work, based on the original classification of the lands in a farm drainage district, as the statute since 1915 provides an appeal to the county court within ten days after the tax list is filed, in which court the land owner is entitled to a hearing on the question whether his land has been taxed more than it is benefited by the proposed work.

2. Same—*assessment for repairs and for new work cannot be levied in one amount.* Assessments may be levied for new and original work in a farm drainage district if necessary to complete the purpose of the original organization, provided the cost does not exceed the benefits, but the cost of the new work cannot be included in a certificate of levy of a sum for repair work under section 41 of the Farm Drainage act.

3. Same—*widening ditches and acquiring new right of way is not repair work.* Section 41 of the Farm Drainage act authorizes an assessment, based on the original classification of the lands of a district, to clean out and restore the ditches to their original condition, but without a new classification and notice a new assessment cannot be made for the purpose of widening ditches and acquiring new right of way.

4. Same—*when lands should be re-classified before making new assessment without notice.* Where thirty years have elapsed since the original classification of the lands in a farm drainage district which is more than twice as large as when first organized, a levy of a new assessment which is larger than the original assessment and which is not strictly for repairs within the meaning of section 41 of the Farm Drainage act cannot be made without notice

307—14

and without a re-classification of the lands, even though the commissioners may have acted in good faith in levying the assessment.

5. SAME—*what allegations of bill to enjoin collection of assessment are not conclusions.* In a bill to enjoin the collection of a farm drainage assessment levied without notice and without a re-classification of the lands, allegations that the original classification was made thirty years ago, that conditions have changed and that the original classification is unfair and unjust as a basis for spreading the assessment, and that the assessment so spread is greatly in excess of the benefits which the complainants will receive, are allegations of facts which are admitted to be true by demurrers.

6. SAME—*equity will enjoin collection of an illegal assessment.* Equity will enjoin the collection of a farm drainage assessment which is illegal and void because in excess of the benefits to the land, as the injunction avoids a multiplicity of suits which would result were each tax-payer required to defend against the tax when sued for by the tax authorities.

APPEAL from the Circuit Court of Jackson county; the Hon. WILLIAM N. BUTLER, Judge, presiding.

R. J. STEPHENS, for appellants.

OTIS F. GLENN, C. E. FEIRICH, FRED G. BIERER, HERBERT, STEWART & HERBERT, L. O. WHITNEL, CRAIG & KINZEL, and MARTIN & GLENN, (GEORGE P. RAMSEY, and JOSIAH WHITNEL, of counsel,) for appellees.

Mr. JUSTICE FARMER delivered the opinion of the court:

This appeal is prosecuted by the commissioners of the Big Lake Special Drainage District in Jackson county from a decree enjoining the collection of a special assessment levied by the commissioners, setting the same aside and enjoining the sale of bonds proposed to be issued against said assessment.

The drainage district was organized under the Farm Drainage act in July, 1891. At the time of its organization it embraced 7626 acres of land, which were classified and assessments levied and collected to do the work. The

boundaries were afterwards extended to embrace 7818 acres of additional land, but no new lands have been annexed since June, 1910. The lands were classified on a scale varying from 100 down to 20. The aggregate assessments levied and collected amounted to $16.12 per acre for the lands classified at 100. July 6, 1921, the commissioners certified to the county clerk an assessment against all the lands of the district of $118,532.78, which amounted to a charge against the lands classified at 100 of $13.24 per acre and $2.64 per acre on the lowest classification. A bill was filed at the January term, 1922, of the Jackson county circuit court by three land owners, on behalf of themselves and all others similarly situated, to enjoin the collection of the assessment. The bill alleged complainants had no notice or knowledge of the levy of the assessment until more than ten days after it was certified, filed and extended on the original classification; that the assessment was excessive, unreasonable, illegal, invalid, and constituted a cloud on complainants' titles. The bill prayed the court so decree. We understand from the statements of counsel that the commissioners (hereafter called appellants) were negotiating for the sale of $99,000 of bonds to be issued against the assessment, and counsel who originally brought the suit, but who are not now appearing for any of the parties, did so for the purpose of obtaining a determination of the validity of the assessment and the validity of the bond issue. Appellants waived the issue and service of process, entered their appearance, filed their answer to parts of the bill and demurred generally and specially to parts of it. Argument was set for January 28. Other counsel for land owners other than the original complainants sought leave to intervene as parties, and the cause was continued to the April term. An amended bill was filed by leave of court, to which the three original complainants and forty-one other land owners were parties complainant. The amended bill need not be set out at large. The principal grounds upon

which the right to relief was predicated were that the work for which the assessment was levied was not a part of or contemplated under the original plan for which the district was organized but a large part of it was new and original work, unnecessary to carry out the purposes of the district; that the assessment was made without a new classification, without notice to the land owners, and they never learned of it until more than ten days after the assessment had been made, certified and filed; that they had no opportunity to appeal, and the assessment amounted to taking their property without due process of law, in violation of the constitutions of this State and the United States. Appellants answered parts of the amended bill and demurred specially and generally to parts of it. The demurrers were overruled, and appellants withdrew their answer and elected to abide by their demurrers. The chancellor entered a decree finding part of the work for which the assessment was made was not repair work, as contemplated by statute, but was new work, and the assessment roll was illegal and void. The assessment was set aside and appellants were enjoined from attempting to collect it and from selling or transferring the bonds.

Big Lake Special Drainage District was organized thirty years ago under and is governed by the Farm Drainage act. The lands in the district remain as they were originally classified. Several assessments have been levied and paid. The special assessment here involved is called No. 7. Appellants claim the assessment was made pursuant to and is authorized by section 41 of the Farm Drainage act. That section provides that after the work is completed the commissioners shall keep it in repair, and if they find, by reason of error in locating or constructing ditches, or from any other cause, the lands are not drained as contemplated, or some of them receive partial or no benefit, they shall use the corporate funds of the district to carry out the original purpose, to the end that all the lands, so far as practicable, shall

receive their proper and equal benefits, as contemplated when they were classified. For that purpose the commissioners are authorized to levy assessments. A brief reference to some other provisions of the Farm Drainage act we believe advantageous to an understanding of the questions involved for decision.

Section 21 provides for the classification of the lands of the district and their assessment for benefits when the plans of the work have been determined upon. The classification, when established, remains the basis for the levy of taxes needed for the lawful and proper purposes of the district. Section 23 provides for a notice and hearing of objections to the classification, and section 24 authorizes an appeal from an order of the commissioners confirming the classification, within ten days after the order is filed. Section 26 provides for the manner of spreading an assessment. Section 27, which was repealed in 1901 and re-enacted in 1915, provides for an appeal, within ten days after the tax list has been deposited with the clerk of the district, to the county court, "but the appeal shall be upon the ground only that such tax is a greater amount than the benefits to accrue to the land in question by the proposed drainage." We have above set out the provisions of section 41 material to this case.

The scheme and plan of the Farm Drainage act appear to contemplate that when the lands are classified, assessed and the work completed, the classification as originally made shall remain the basis for such future assessments as are needed to keep the work in repair so that it will accomplish the results contemplated in the organization of the district. Prior to 1901 and since 1915 no notice was or is required to be given the land owners of an assessment, based on the original classification, to keep the work in repair, but the commissioners are authorized to make, certify and file a tax levy for repair work without notice, and the only remedy of an objecting land owner is an appeal to the

county court within ten days after the tax.list is filed, where he may have a court review on the question whether his land has been taxed more than its benefits by the proposed work. (*People* v. *Hulin,* 237 Ill. 122; *People* v. *Bradshaw,* 303 id. 558.)   After the repeal of section 27 in 1901, and before its re-enactment in 1915, it was held that the land owner might, on application for judgment, have a hearing on the question whether the assessment exceeded the benefits, because the statute during that period afforded him no other opportunity to be heard on that question. *People* v. *Welch,* 252 Ill. 167; *People* v. *Whitesell,* 262 id. 387.

If the work for which the present assessment was levied was properly repair work authorized by section 41 it might lawfully be made on the basis of the original classification, without notice to the land owners, but appellees charge that a great part of it was not for repair work but was for new and original work.   It contemplated widening and enlarging the Worthen Bayou ditch, one of the principal ditches of the district, and for that purpose the acquisition of a strip of land 101 feet wide, which, as we understand it, is approximately four miles long.   This was not contemplated when the district was organized, the lands classified, assessed and the work completed, about thirty years ago.   The bill alleges that but one certificate for the tax levy was made and filed, by which the commissioners state:   "We hereby certify that we require the sum of $118,532.78 to be levied as a special assessment or tax for drainage purposes on the lands and property benefited in the Big Lake Special Drainage District, in the county of Jackson and State of Illinois."   The certificate contains no statement of the amount required for repairs and the amount necessary to obtain the land and enlarge the Worthen Bayou ditch.   In *People* v. *Brown,* 253 Ill. 578, the certificate of levy on its face purported to be for repairs, but the court said the levy was, in fact, made to pay for work done and to be done not in pursuance of the original plan; that dig-

ging new ditches and making the original ditches deeper and wider were not repair work. In *People* v. *Peeples,* 291 Ill. 537, an assessment was levied to clean out drifts and fills and to enlarge two ditches. The court said the resolution on its face showed the assessment was made for both original work and for repairs; that cleaning out drifts and fills is repair work, but enlarging two of the ditches is not repair work but is original work. A large part of the work for which this assessment was made is not repair work contemplated by section 41.

In *People* v. *Brown, supra,* the court said the power to levy assessments was necessary to the organization and existence of drainage districts, but the land owner has a right to the protection of the constitution and law and is not the lawful prey of officials entrusted with authority to levy assessments. The classification of the land fixes only the proportion it shall bear of any lawful levy made. New and original work may be done and assessments lawfully made for that purpose if found necessary to complete the purpose of the original organization, provided its cost does not exceed the benefits, but the cost of the new work cannot be combined in a certificate of levy of one sum for repairs and new work. Such a levy was held to be illegal in the *Brown case.* Section 41 authorizes an assessment, based on the original classification, to clean out and restore the ditches to their original condition, but without a new classification and notice a new assessment cannot be made for the purpose of widening ditches and acquiring new right of way. (*People* v. *Gibson,* 293 Ill. 80.) Manifestly, the assessment cannot be sustained under the authority of section 63, for the assessment authorized by that section is for the completion of the work if the original assessment proves inadequate. The work of this district was completed thirty years ago. Even if an assessment for new and original work could be made under section 41 at the same time an assessment is made for repairs, the assessment must be held illegal because the

certificate of levy does not state what part of the assessment
is for repairs and what part of it is for new work.   This
was held to be necessary in *People* v. *Peeples, supra.*

   The situation presented by this case is rather an extra-
ordinary one.   The classification of the lands in the district
at the time of its organization, upon which the assessment
was spread, was made thirty years ago.   Approximately
9000 acres of land have been added to the district since its
organization but no new classification has ever been made.
The bill alleges that the enlargement and improvement for
which the assessment was levied is unnecessary and not re-
quired to carry out the purpose for which the district was
organized; that the assessment is grossly excessive; that
it was made without a new classification of the land and
without notice to the land owners; that owing to the great
length of time which has elapsed since the classification was
made and the changed conditions and land values in the dis-
trict, any assessment based on the original classification is
unjust, inequitable and illegal.   The bill alleges all of ap-
pellees' lands were assessed greatly in excess of the benefits
they would receive, and amounted to taking appellees' lands
without due process of law.   No case parallel with this has
been called to our attention.   The statute fixes no definite
period of time during which the original classification may
be made the basis of subsequent assessments.   The act rec-
ognizes that reasons may arise requiring a new classifica-
tion.   Section 21 authorizes the commissioners to make a
new classification when they believe, from experience and
results, that the former classification was or is not fairly
adjusted on the several tracts of land according to benefits
they may derive from new or additional assessments.   It
would seem in reason that a classification made thirty years
ago for a district less than half its present size would not
afford an equitable and just basis for spreading an assess-
ment for a larger amount than was required to organize the
district and complete the work.   It may be the many years

which have elapsed since the classification was made would not be a valid objection to a levy of a reasonable amount for necessary repairs, but it would be an astonishing situation to say that when the classification is made and confirmed it shall for all time be used as the basis for spreading all future assessments, without regard to whether changed conditions make the original classification unjust and unfair to the lands, or some of them. In this case more than forty land owners allege in their bill that the assessment spread on their lands on the basis of the original classification is unreasonable, unjust and greatly in excess of the benefits. The demurrers admit all the allegations of the bill which are well pleaded. Appellants contend the allegations of the bill consist principally of conclusions, which the demurrers do not admit. That the classification made thirty years ago has, on account of changed conditions, become unfair and unjust as a basis for spreading the assessment, and that the assessment spread on that basis on appellees' lands is greatly in excess of the benefits they will receive, are allegations of facts, and the demurrers admit them to be true. Another fact averred and admitted to be true is that appellees had no knowledge or information of the levy of the assessment until more than ten days after it had been made and filed. They were therefore prevented from appealing to the county court on the question of benefits. That would not have invalidated the assessment if it had been properly made and certified for an authorized purpose, which we have seen it was not, and under the decisions in *People* v. *Brown, supra,* and *People* v. *Peeples, supra,* for the reasons stated in those cases, the tax was illegal. If the tax exceeded the benefits it violated the constitution and was illegal and unauthorized. The constitution forbids an assessment in excess of benefits to the land, and such a tax is illegal and void. Equity will enjoin the collection of a tax levied without authority of law, especially as it would involve a multiplicity of suits to require each tax-payer to defend against

the tax when sued for by the tax authorities. *Hawkins* v. *County of Lake,* 303 Ill. 624; *Drainage Comrs.* v. *Kinney,* 233 id. 67; *Knopf* v. *First Nat. Bank of Chicago,* 173 id. 331.

We cannot escape the conviction that in levying this assessment due regard was not had to the rights of land owners. If they had been watching the clerk's office and had seen the tax list in time to have appealed on the question of benefits they would have been afforded no information as to how much of the tax was for repairs and how much of it was for new or original work. While there is no statute which expressly required a re-classification after thirty years and the changes that in the nature of things must have taken place in lands of the district during that period, it would seem that wisdom and good judgment on the part of the commissioners, as well as fairness and justice to the land owners, would require a re-classification before an assessment of the magnitude of and for the purposes of this assessment should be made and the land owners afforded an opportunity to be heard, otherwise the land owners may be subjected to great injustice. We do not wish to be understood as intimating that the appellants were not actuated by proper motives in levying the assessment. Whether they acted in good faith or not, we would be reluctant to hold that in any case the property owners could be made what this court said in the *Brown case, supra,* they could not be made,—"the lawful prey of the officials entrusted with authority to levy assessments." Important as the subject of drainage is, the lawful rights of land owners should not be disregarded.

The decree is affirmed.

*Decree affirmed.*