(No. 33821.—

Walter Bade *et al.,* Appellants, *vs.* The Commissioners of Union Drainage District No. 2, Appellees.

*Opinion filed March 22, 1956—Rehearing denied May 22, 1956.*

DONALD D. ZEGLIS, of Momence, and DYER & DYER, of Kankakee, for appellants.

VARNUM A. PARISH, of Momence, for appellees.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

This is an appeal by three land owners from a judgment of the county court of Kankakee County which assessed against their lands the amounts which had been extended by the commissioners of Union Drainage District No. 2 of the towns of Ganeer and Momence in a special assessment tax list. This court has jurisdiction of their appeal. Ill. Rev. Stat. 1953, chap. 37, par. 160; *Bainum v. Comrs. of Randolph Drainage Dist. No. 1,* 257 Ill. 486; *Kline v. Barnes,* 250 Ill. 404.

On June 29, 1955, the commissioners adopted a resolution upon which this proceeding is based. The resolution recited that prior to January 20, 1955, the district had adopted a plan of drainage to afford adequate drainage facilities to all land in the district; that upon completion of the work, it became apparent that the system previously adopted would not accomplish its original purpose because it did not provide sufficient drainage for much of the land lying in the district, and that in order to accomplish the purpose originally intended, it would be necessary to widen and deepen the main ditch of the district and to construct a new ditch 4200 feet in length and 4 feet deep. The resolution stated that on January 20, 1955, there were no funds available to do this work and the commissioners passed a resolution finding it necessary to raise $7949.92 for the purpose of doing the work described, by special

assessment upon the lands of the district according to the classification of lands of the district confirmed on October 26, 1929. The resolution further stated that upon an appeal by the present appellants from the tax so levied against their property, the county court, on June 20, 1955, held that the assessment had not been legally made; that the commissioners had theretofore let a contract for the proposed work, a substantial portion of which had already been completed; that there would not be sufficient funds to complete the work in accordance with the contract unless the assessments levied against the lands of the appellants are collected in full in the aggregate amount of $1104. The resolution directed that $1104 be raised by special assessment upon the lands of the appellants according to the special assessment tax list filed on January 20, 1955, and the classification confirmed on October 26, 1929.

On June 29, 1955, a special assessment tax list was filed with the clerk of the district, showing assessments against the lands of the appellants, aggregating $1104. On July 6, the appellants, Walter Bade, George Bade, and Frank Luedtke, appealed to the county court of Kankakee County by filing their individual appeal bonds. Thereafter, they moved to dismiss the assessment levied by the resolution of June 29 upon the ground that the resolution showed on its face that the assessment was for new work and not for repairs to the existing system and that the assessment was therefore void because no new classification had been made. The motion was overruled. Evidence was heard, the motion of the commissioners for a directed verdict was granted, and the jury returned a verdict levying the aggregate sum of $1104 against the lands of the appellants. Judgment was entered on the verdict and this appeal followed.

In this court the appellants contend that the commissioners were without authority to levy a tax for widening and deepening the existing ditch and for constructing a new ditch without making a new classification of the lands

of the district. The commissioners, on the other hand, maintain that a new classification was not required, and that in any event the county court lacked jurisdiction to consider that question.

Drainage districts derive their authority to make special assessments from section 31 of article IV of our constitution. Section 21 of the Farm Drainage Act provides for the classification of the lands of the district and their assessment for benefits as soon as the commissioners have determined the plans for work. The classification, when established, remains the basis for the levy of taxes needed for the lawful and proper purposes of the district. Section 23 provides for notice, and a hearing before the commissioners, upon objections to the classification. Section 24 authorizes an appeal to the county court from the order of the commissioners confirming the classification within 10 days after the order is filed. Upon such an appeal the classification of the land involved in the appeal may be reviewed. Section 27 provides for an appeal to the county court within 10 days after the tax list has been deposited with the clerk of the district, "but the appeal shall be upon the ground only that such tax is a greater amount than the benefits to accrue to the land in question by the proposed drainage." (Ill. Rev. Stat. 1953, chap. 42, pars. 103, 105, 106, 110.) Section 41 provides that, after the completion of the original work, the commissioners shall keep it in repair, and if they find that by reason of error in locating or constructing ditches, or from other causes, the lands of the district are not drained or protected as contemplated, or some of them receive partial or no benefit, they shall use the corporate funds of the district to carry out the original purpose to the end that all of the lands, so far as practicable, shall receive their proper and equal benefits as contemplated when the lands were classified, and that if sufficient funds are not available, the commissioners

shall make a new tax levy. Ill. Rev. Stat. 1953, chap. 42, par. 125.

This court has frequently had to determine whether particular work being done by a drainage district was repair work, for which an assessment could be made upon the basis of the existing classification, or was new work which required a new classification. In these cases, however, the question was presented either upon the application of the county collector for judgment of sale for delinquent assessments, (*People ex rel. Crowe,* v. *Sullivan,* 238 Ill. 386; *People ex rel. Kellogg* v. *Brown,* 253 Ill. 578, 582; *People ex rel. Elliott* v. *Peeples,* 291 Ill. 537, 541; *People ex rel. Ormsby* v. *Gibson,* 293 Ill. 80; *People ex rel. Smith* v. *Barnes,* 324 Ill. 93,) or by injunction to restrain the collection of assessments. (*Reynolds* v. *Milk Grove Special Drainage Dist.* 134 Ill. 268; *Schwartz* v. *Comrs. of Big Lake Special Drainage Dist.* 307 Ill. 209, 214-5.) The statutory limitation upon the scope of an appeal under section 27, like this one, appears to have been consistently applied. In *Sisson* v. *Drainage Comrs. of Drainage Dist. No. 1,* 163 Ill. 295, the objecting land owners contended that after the assessment was made the drainage commissioners determined to lay the tile at a greater depth than was contemplated by the engineer's plans without recording the resolution so providing. This court held that the question could not be raised upon an appeal under section 27, saying: "The statute peremptorily declares the only question to be determined on the appeal. No discretion exists in the courts." 163 Ill. at 298.

Appellants assert that since an assessment based upon a void classification of lands in a drainage district is likewise void, (*People ex rel. Olmsted* v. *Prather,* 322 Ill. 280, 283; *People ex rel. Matter* v. *Larsen,* 282 Ill. 501, 503,) an assessment which purports to be based upon an improper classification, as they argue is the case here, is in effect

not based upon any classification, and so is void. A like contention was held not to be available on an appeal under section 27 in *People ex rel. King* v. *Fulton,* 280 Ill. 415. There the land owners resisted an application for judgment and order of sale against their lands for delinquent drainage assessments upon the ground that the assessments were void because the commissioners had allowed credits for payments made by certain land owners on a previous illegal assessment. The collecter contended that the question was not open on application for judgment of sale because the remedy of the land owners was by appeal under section 27 of the Farm Drainage Act. Holding the assessment void, this court said (p. 419) : "Defendants in error are making no contentions here on the question of benefits or that the amounts assessed are greater than the benefits to accrue to their lands. They are objecting that the assessment is void for the reason that it was levied, not to pay for work proposed to be done, but to pay for work which had already been completed. The appeal provided for by section 27 of the Farm Drainage Act being confined to the sole question that the tax was greater in amount than the benefit to accrue to the lands, the question here presented could not have been raised had such appeal been taken. This is the first opportunity defendants in error have had to raise this question."

In accordance with the authorities cited, we hold that the validity of the classification is not open in this proceeding.

Appellants further contend that there was substantial evidence of nonbenefit to them, and that therefore a verdict should not have been directed against them. The evidence introduced by the commissioners showed the passage and filing of the resolution of June 29, 1955, and the filing of the tax list or assessment roll. This was sufficient to establish a *prima facie* case. (*Comrs. of Drainage Dist. No. 1* v. *Goembel,* 383 Ill. 323; *Briggs & Frith* v. *Union*

*Drainage Dist No. 1*, 140 Ill. 53.) Neither the area of the district nor its location appears in the record. It does appear that the land owned by appellants is in the extreme northwest corner of the district near the outlet, and that the lands of the entire district drain toward the northwest. George Bade owns 159 acres; Walter Bade, 160; Luedtke, 12. The proposed improvement is to begin 112 rods upstream from George Bade's farm, and to extend four miles upstream from that point. A large tile and a small open ditch enter Walter Bade's tract on the east, turn north, then flow through George Bade's adjoining farm on the north. Two hundred rods of main tile run through their lands. George Bade has at least two laterals draining into the district tile. Walter Bade has an 8-inch tile draining into the main tile of the district; he has at least 80 rods of lateral. He testified, "That tile benefits my land some." In the five years preceding the special assessment, substantial repair work was done on the main tile where it passes through the Bades' lands.

Each of the appellants testified that no water from his land would drain into the proposed improvement. Objections were sustained to questions calling for the conclusions of the witnesses as to whether or not their land would be benefited. George Bade testified that the improvements would cast more water upon his land, "probably run more water down there, run it over the ground. It will probably damage some of the crops." He also testified, however, that without the lateral which drained his land into the district system, the water from the higher land to the east would run over his land.

At most, the evidence established that water from the appellants' lands would not drain into the proposed improvement. There are ambiguous references to substantial improvements made to the main district tile where it passes through the Bades' land at a time when the Bades were commissioners of the district, but it is impossible to deter-

mine the exact situation from the record filed here. What appears to have been a similar situation was presented in *Briggs & Frith* v. *Union Drainage Dist. No. 1,* 140 Ill. 53, which holds that persons whose lands have been drained by money raised by a first assessment cannot defeat a second assessment necessary to drain the lands of his neighbors in the same district upon the ground, alone, that their lands do not need any further drainage. One of the land owners was asked: "State whether, in your judgment, the ditch requires any additional work or repairing in order to drain your lands" and "Will your land be benefited by the additional work proposed by the commissioners?" Upon appeal, this court held that objections to these questions were properly sustained. Pointing out that what the objectors were seeking to show was that their lands would not benefit by the improvement proposed to be made from the funds raised by the second assessment, this court said (p. 58): "Appellants, although these lands were drained by money raised by the first assessment, could not defeat a second assessment which was necessary to drain the lands of their neighbors who were in the same district, on the ground, alone, *their* lands did not need any further drainage."

Appellants insist, however, that the *Briggs case* is inapplicable because the proceeding there was under section 63, which authorizes an assessment for the completion of the proposed work where the original assessment proves inadequate. The reasons supporting the conclusion in the *Briggs case,* in our opinion, apply with like force to the present proceeding initiated under section 41. Here the evidence shows that appellants' lands are benefited by the overall drainage project. Their unsupported denial that their property will benefit from the contemplated improvement fails to show that their assessments exceed their benefits.

Appellants say that the sole reason for the present as-

sessment against their lands is to recoup an earlier assessment of $1104 which had been held illegal by the county court and thereby to effect collection of the full amount of $7949.92 originally assessed. Section 79 of the Farm Drainage Act declares that if any special assessment for the construction or repair of any work in any farm drainage district is annulled or invalidated on account of any matters not affecting the merits of the assessment, a new assessment may be made and the proceedings therefor shall be the same as for the prior assessment, "and if only a part of the said special assessment shall be so annulled, or be held not legally made, then in making the reassessment it will not be necessary to proceed in any way against the lands in reference to which the assessment has not been set aside, but the proceedings shall only be had with reference to the lands in reference to which the assessment has been annulled or held not legally made as aforesaid." (Ill. Rev. Stat. 1953, chap. 42, par. 164.) So far as the record discloses, the assessment of January 20, 1955, against the lands of appellants may have been annulled because of matters not affecting the merits of the assessment. We can not assume the contrary in order to reverse the judgment of the trial court.

The appellants contend that their challenge to the array was improperly overruled. A special jury venire, including four women, was summoned to hear the case. Before the trial commenced, the appellants challenged the array of jurors upon the ground that some of the jurors were women. The challenge was overruled. It is argued that section 25 of the Farm Drainage Act (Ill. Rev. Stat. 1953, chap. 42, par. 107,) is applicable and requires that the jury be composed of men who are disinterested landowners. The propriety of impaneling women on the special jury in this case does not require disposition, however, because the verdict was directed. The presence of women on the jury could not, therefore, have substantially impaired the

rights of the appellants. *People ex rel. Greenwood v. Board of Supervisors of Madison County,* 125 Ill. 334, 340. Cf. *People v. Lieber,* 357 Ill. 423; *People v. Herkless,* 361 Ill. 32.

The judgment of the county court of Kankakee County is affirmed.

*Judgment affirmed.*