(No. 19068.—

THE COMMISSIONERS OF McGEE CREEK LEVEE AND DRAIN-
AGE DISTRICT, Defendants in Error, *vs.* W. M. SIDES
*et al.* Plaintiffs in Error.

*Opinion filed October 19, 1929.*

HUBBARD & LEWIS, for plaintiffs in error.

WILLIAMS & WILLIAMS, and ELIZABETH MAYO, for defendants in error.

Mr. JUSTICE DUNN delivered the opinion of the court:

The county court of Pike county, upon the application of the commissioners of the McGee Creek Levee and Drainage District, confirmed an assessment against the lands of the district for the purpose of increasing the height of the levee, constructing certain ditches, increasing the capacity of the pumping plant and providing means for the payment of obligations incurred for the current expenses of the district and for the protection of its work. This judgment of confirmation was reversed at the December term, 1925, and the cause was remanded to the county court. (*McGee Creek Levee and Drainage District* v. *Wabash Railway Co.* 319 Ill. 379.) There was another hearing of the objections of the former appellants, except the Wabash Railway Company, Dorwart and Goebel, and another order of confirmation was entered against them, to reverse which they have sued out this writ of error.

One of the assignments of error is, that "the jurisdictional notice required by the statute to amend the petition after the cause was remanded was posted by one of the commissioners and not by a disinterested person, as required by the law of Illinois, and was objected to by Laura M. Cavanaugh, who made no further appearance in the case." The abstract shows that the court overruled her motion to quash the drainage notice but does not show her motion in the bill of exceptions. The ruling of the court, therefore, on this motion is not before us for review. Moreover, the abstract shows that Laura M. Cavanaugh did enter her general appearance in the case by joining in the motion for a new trial. The effect of this was to call on the court to exercise its jurisdiction by granting a new trial and was a waiver of any objection to the notice.

In addition to the elevation of the levee the assessment was made for the purpose of constructing three additional ditches in the district, known as the main ditch cut-off, the Round Pond ditch and the Barlow Lake ditch, the enlargement of an existing ditch of the district known as the auxiliary main ditch, the installation of four additional engines and pumps in the pumping plant of the district, together with other machinery and equipment for the operation of the pumping plant and for the payment of the indebtedness incurred by the district. The assessment for increasing the height of the levee was spread against all the lands of the district at the uniform rate of $7.80 an acre. The existing levee was slightly higher than the highest land in the district. The variation of level of the lands of the district was only seventeen feet. Two of the objections were, that the assessment of each tract of the lands of the plaintiffs in error was greater than the benefits to be derived from the work to be done and more than its proportionate part of the amount to be raised for such work. The plaintiffs in error contended on the hearing that the uniform assessment was not justified because their lands were the high lands of the district, which received little benefit, or none at all, from the raising of the levee. Much contradictory evidence was introduced on the question of the relative benefit which would be received by the high lands and the low lands. The insufficiency of the existing levee had been shown by the high waters of 1922, when the river reached the top of the levee and the district was forced to incur an expense of $21,800 to protect the levee and prevent the flooding of the whole district. Also the plaintiffs in error contended that the construction of the new ditches and the increase in the capacity of the pumping plant would be of no benefit to them because the water from their lands would not reach the new ditches, that they were already supplied with ample drainage facilities, and the proposed change would not add to the value of their lands or benefit them

in any way. On the other hand, the commissioners contend that water from the lands of the plaintiffs in error does flow through the proposed new channels, as well as water coming from the higher lands outside the district beyond the plaintiffs in error's land and running down on the lands of the district over the plaintiffs in error's land; that the water will be conducted by the new channels more speedily by a shorter course to the pumping plant, which by its additional capacity will more quickly get rid of the water in times of freshet and will lower the water table in the lands of the plaintiffs in error to the benefit of their production and the increase of their value. Evidence was introduced tending to support each of these theories. The assessment of benefits from drainage was made according to a scale based on the elevation of the respective tracts and varied from $13.96 an acre for the lowest lands to $2.96 an acre for the highest. The opinions of the witnesses on the question of benefits were wide apart, varying from nothing to $50 an acre, and the testimony as to the facts was contradictory. The assessment roll, a map of the district and the testimony of witnesses were introduced by the commissioners and the objectors and the jury viewed the premises. The cause has been argued on the evidence as to the validity of the assessment, the amount of the benefits assessed against the various objectors and the proportionate amount of the cost of the improvement. The evidence was highly conflicting. Since the judgment must be reversed and the cause remanded because of error in instructing the jury, the weight of the evidence will not be discussed.

The court instructed the jury, at the request of the commissioners, "that the commissioners' roll of assessments of benefits and damages, introduced in evidence, may be taken and considered by the jury, and you may give to it such weight as you think it is entitled to, when considered in connection with all the evidence in the case and your view of the lands." Again, that "if you believe from the evidence

and your view of the premises that the correctness of the commissioners' roll of assessments of benefits and damages, introduced in evidence, has been overcome; nevertheless, said assessment roll would still be competent to be considered by you in connection with all of the evidence in the case, and your view of the premises, and you may give to it such weight as you believe the same is entitled to." A third instruction told the jury that "if you believe from the evidence and your view of the premises that the correctness of the commissioners' roll of assessments of benefits introduced in evidence, has been overcome as a *prima facie* case, nevertheless said assessment roll would still be competent to be considered by you in connection with all of the evidence in the case, and your view of the premises, and you may give to it such weight as you believe the same is entitled to, if any, in view of all the evidence in the case and your view of the premises."

Section *17a* of the Levee act provides that "said commissioners, on behalf of said district, shall present and file as their claim against the several land owners and tracts of land, the assessment roll provided for in section seventeen (17) of this act, which shall make out a *prima facie* case for the commissioners." The meaning of this language and its effect upon the proceedings in the trial of a case have been determined by numerous decisions of this court, and the conclusion is stated in *Village of Bellwood* v. *Galt*, 321 Ill. 504, that the only effect of the statute making a certificate *prima facie* evidence of compliance with the law is, that such compliance should be assumed until evidence to the contrary is introduced. That was a special assessment proceeding under the Local Improvement act, in which the provision of section 9 of that act that the recommendation by the board (of local improvements) shall be *prima facie* evidence that all the preliminary requirements of the law have been complied with was construed as merely establishing a rule of procedure changing the burden of proof. The

language was the same as in the Levee act and the case merely followed a series of decisions to the same effect. In *Chicago Terminal Transfer Railroad Co.* v. *City of Chicago,* 217 Ill. 343, the same language was construed as used in section 23 of the Local Improvement act, providing that in proceedings under that act for the making of just compensation for property taken or damaged in the making of any local improvement the commissioners' report "shall be *prima facie* evidence both of the amount of the compensation to be awarded and of the benefits to be assessed," and it was held that the report made a *prima facie* case but was subject to be rebutted, and when met and overcome by the evidence to the contrary the presumption no longer prevailed. The case of *City of Rockford* v. *Mower,* 259 Ill. 604, arose under the same section as the case last cited, and it was held that when the land owner introduced evidence upon the question of the value of the land sought to be taken and upon the question of the damages to the land not taken the report of the commissioners ceased to have any weight as evidence, and it was then incumbent upon the city to meet the evidence offered by the land owner upon those questions unless the city was satisfied with the values and damages fixed by the witnesses for the land owner. This decision was followed in *People* v. *Whitesell,* 262 Ill. 387, an application by the county collector for judgment and order of sale of real estate for failure to pay a drainage assessment. The collector made a *prima facie* case under the statute by the introduction of his report, with proof of publication of notice. It was held that the *prima facie* case must prevail unless there is evidence to the contrary, and it casts the burden upon the objector in the sense of requiring him to produce such evidence. After that is done the collector must meet such evidence, and the report ceases to have any force as proof and the issue must be determined from the evidence. *City of Peoria* v. *Peoria Railway Co.* 274 Ill. 48, *City of Chicago* v. *Matteson,* id. 308, and *City of Chicago* v.

*Lederer,* id. 584, are all to the same effect, and hold that the effect of the statute declaring the certificate or report to be *prima facie* evidence of certain facts is merely to change the burden of proof; that the certificate or report and assessment roll are not entitled to the weight of the testimony of a witness in arriving at a verdict and when evidence is offered in opposition cease to have any weight whatever as evidence; and the last case cited holds that in such case it was error to instruct the jury that the report was *prima facie* evidence, or any evidence whatever, as to the value of the land taken. "On a trial of the issue the roll is not evidence of anything." (*City of Carlinville* v. *Anderson,* 303 Ill. 247; *Village of Oak Park* v. *Hulbert,* 307 id. 270.) In the case of *Freesen* v. *Scott County Drainage District,* 283 Ill. 536, an instruction substantially like these instructions was given and was held not to be erroneous, but this is at variance with the cases which have been cited, both before and since, and with other like cases. The giving of these instructions was harmful to the plaintiffs in error. The evidence was conflicting, and when the jurors were told that in spite of the conflict in the evidence they might consider the assessment roll and give it such weight as they believed it entitled to, they were told, in effect, that they might properly be controlled in their verdict by the assessment roll, while under the law that roll was of no probative force whatever.

The plaintiffs in error contend that the assessment is invalid because of the failure to assess the highways within the district. Section 55 of the Levee act authorizes an assessment of benefits against highways benefited by any ditch, drain, levee or other work of the district, and the commissioners made no assessment of benefits against any of the highways in the district. There is no evidence that they were benefited. The plaintiffs in error's argument refers to page 210 of the abstract and pages 495 and 496 of the record for the evidence of one of the commissioners on the subject, but

the abstract contains only 155 pages, and pages 495 and 496 of the record as abstracted do not relate to the subject and do not contain the testimony of a commissioner. The assessment roll showed that the highways would receive no benefit and no assessment was made against them. There being no other evidence the objection was not sustained.

A part of the assessment was for money which had been borrowed and expended by the district in protecting the levee during the flood of 1922. The plaintiffs in error contend that no assessment should be made for liabilities incurred before an assessment was made and cite decisions to that effect. These cases, however, arose under the act before the amendment of section 37 in 1909, which added to the purposes for which an assessment might be levied the following words: "To pay obligations incurred for the current expenses of said district or in keeping in repair and protecting the work of such district." After that amendment it was held that an assessment could be levied for obligations already incurred for current expenses. *Meridian Line Drainage District* v. *Wiss,* 258 Ill. 600; *Hunt Drainage District* v. *Cole,* 283 id. 105; *Deneen* v. *Deneen,* 293 id. 454.

The plaintiffs in error's first objection to the levee assessment was that the necessity for the elevation of the levee was occasioned by the flow of water from the Chicago sanitary canal, and the assessment is therefore an unlawful and illegal purpose in assessing the lands of the district for the benefit of the Chicago Sanitary District. In their brief they cite decisions to the effect that if, by reason of the flow of water from a sanitary district channel into a connecting river, lands are overflowed and injured, the district is liable to the owner of such lands, irrespective of whether the district has been guilty of any negligent act in its management. The point is not further argued. There is no assignment of error which covers it and there seems to be no reason for giving any further attention to the question. The district

has a right to protect its lands from overflow, whether some other person or corporation is liable for the damages occasioned by the overflow or not.

The order and judgment of the county court are reversed as to the plaintiffs in error and the cause is remanded to the county court.

*Reversed and remanded.*