(No. 20034.—

THE BEAVER POND DRAINAGE DISTRICT, Defendant in Error, *vs.* WILLIAM W. GRAY *et al.* Plaintiffs in Error.

*Opinion filed October 25, 1930.*

E. S. KINGSBURY, and SUMNER & LEWIS, for plaintiffs in error.

McGAUGHEY, TOHILL & McGAUGHEY, for defendant in error.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

The commissioner of Beaver Pond Drainage District filed a petition in the county court of Lawrence county, under section 37 of the act to provide for the construction, reparation and protection of drains, ditches and levees, across the lands of others, for agricultural, sanitary and mining purposes, and to provide for the organization of drainage districts, approved May 29, 1879, as amended, (Cahill's Stat. 1929, p. 1039; Smith's Stat. 1929, p. 1124), asking the court to direct the levy of an additional assessment against the lands of the district for the purpose of dredging and cleaning its ditches and for other work. An itemized statement of the accounts of the district showing the moneys received and disbursed, together with plats and profiles of the proposed work and its estimated cost accompanied the petition. Upon a hearing the prayer of the petition was granted. Thereafter an assessment roll was filed and William W. Gray, both individually and as trustee of the estate of Allen Gray, deceased, the State Life Insurance Com-

pany and John Newell filed objections to the confirmation of the assessment. A jury was empaneled and a hearing upon the question of benefits resulted in a slight reduction of the aggregate assessment. The roll as modified by the jury was confirmed by the county court and the objectors prosecute this writ of error for a reversal of the judgment.

The Beaver Pond Drainage District of Lawrence county was organized in the year 1896 under the provisions of the act above mentioned. The district forms a part of an extensive plain of approximately 40,000 acres, known as Allison prairie, which lies north and east of the Embarrass river, west of the Wabash river, and south and east of higher lands called the Sand ridge and the Hills. The district's length from north to south is approximately seven and one-half miles; it has an average width of two miles and it comprises within its boundaries 9659 acres of land. To protect Allison prairie from overflow by the waters of the Wabash river, the Russell and Allison Drainage District built, upwards of forty years ago, and has since maintained, a levee on the west bank of the river from Crawford county on the north to a point below Vincennes; Indiana, on the south. Allison Ditch Districts Nos. 1 and 2 lie between the Beaver Pond Drainage District and the Wabash river. The Otter Pond Drainage District collects waters which accumulate north and west of the Beaver Pond district and formerly conducted them into the Embarrass river near Lawrenceville, the county seat. The Taylor Pond Drainage District includes a small area of land in Crawford county and extends south to the Otter Pond district; and the main ditches of the two districts were connected shortly after the districts were organized. Subsequently, in the year 1918, a like connection was made between the main ditches of the Otter Pond and Beaver Pond districts. These connections bring water in large volume from the Taylor Pond and Otter Pond districts into the Beaver Pond district and the water is carried through the ditches of the

last named district to the Embarrass river at a point near its confluence with the Wabash river.

About the year 1916, the Russell and Allison Drainage District built a second levee from a point in its levee along the Wabash river three miles south of Vincennes, Indiana, westwardly to the higher land, a distance of three and one-half miles. The purpose of this cross-levee was to prevent the inundation of Allison prairie by the waters of the Wabash and Embarrass rivers when at flood stage. The cross-levee intersected the ditches of the Allison Ditch Districts Nos. 1 and 2 and the Beaver Pond district near their respective outlets. The levee was built of concrete at the point where it crossed the main ditch of the Beaver Pond district. This concrete wall had two four-foot openings each equipped with an automatic gate which closed when the two rivers reached a certain height thereby preventing their flood waters from submerging the lands of the district. When these gates were closed, the water accumulated from the Taylor Pond, the Otter Pond and the Beaver Pond districts was impounded north of the levee and in consequence overflowed the lower portion of the Beaver Pond district and the territory contiguous thereto. The proposed work includes the construction of two additional openings with automatic gates in the concrete wall.

The lands of the objectors are situated in the south or lower end of the Beaver Pond Drainage District. Ten witnesses, called by the objectors, all of whom had been engaged in farming in the lower end of the district, testified that since the ditches of the Taylor Pond and Otter Pond Drainage Districts had been connected with the ditches of the Beaver Pond district and the cross-levee had been built, the lower lands of the Beaver Pond district were often submerged by the accumulation of water from the upper districts, and that the raising of crops on the lower lands was thereby prevented.

Twelve witnesses called by the petitioner, including the commissioner and the engineer of the district, testified that there were obstructions in the main ditch and that dredging and cleaning it would improve the drainage of the district. Only one of these witnesses owned or cultivated land in the lower part of the district; others were not familiar with the lands of the objectors and several admitted that certain parts of the district would receive greater benefits than other portions. Three of the witnesses testified that if the main ditch were dredged the water would flow more rapidly and less water would remain in the district after the automatic gates in the cross-levee had closed. A like number of the petitioner's witnesses testified that, whenever these gates were closed, the existing system supplemented by the completion of the proposed work would not afford adequate drainage to the lands of the district.

A preliminary question is presented for determination by the contention of the defendant in error that the record fails to disclose that the bill of exceptions contains all the evidence in the case. The bill of exceptions expressly purports to set forth all the evidence offered by the respective parties; it shows that each party rested when the introduction of his or its testimony had been concluded; it contains the certificate of the court reporter that "the foregoing was all of the evidence introduced upon the trial of this cause," followed by the instructions to the jury, the verdict and the motions by the objectors for a new trial, and the whole is certified by the trial judge. While the reporter's certificate alone is not sufficient to show that the bill of exceptions contains all the evidence, yet that certificate and the other facts enumerated, all of which affirmatively appear from the record, when taken together, are sufficient for that purpose. *People* v. *Nelson,* 320 Ill. 273.

The plaintiffs in error contend that the trial court admitted incompetent evidence offered by the petitioner. Certain witnesses were asked whether, in their opinions, the district

would be benefited by the proposed improvement when completed. A like inquiry was made of other witnesses concerning lands in the north end of the district. Objections were interposed to these questions, but the objections were overruled, and the witnesses answered in the affirmative. A question whether the whole or some part of a district will be benefited by the construction of the proposed improvement does not aid the jury in determining whether, and if so, to what extent, a particular parcel of land will be benefited thereby. Under the constitutional provision relating to drainage, a special assessment for that purpose can be levied only on the property benefited, and in no case may the assessment upon a particular tract exceed such benefits. (*McGee Creek Drainage District* v. *Wabash Railway Co.* 319 Ill. 379; *Little Beaver Drainage District* v. *Livingston,* 270 id. 582; *Havana Township Drainage District No. 1* v. *Kelsey,* 120 id. 482). The questions asked were therefore incompetent and the objections thereto should have been sustained.

The contention is made that the third instruction given at the request of the defendant in error was erroneous and prejudicial to the plaintiffs in error. It informed the jury that "the commissioner's roll of assessments introduced in evidence in this case makes out a *prima facie* case in favor of the district that the lands described therein will be benefited to the extent shown by the assessment roll, and that the amount assessed against each tract is the proportionate share of the entire cost of the improvement to be borne by that tract, and it then becomes incumbent upon the land owner to rebut the *prima facie* case by showing that his land has been assessed by the commissioner more than it will be benefited or for a greater amount than its proportionate share of the entire cost of the improvement and by further showing what amount, if any, his land will be benefited." While section 17a of the act under which the Beaver Pond Drainage District was organized provides that the

assessment roll shall make out a *prima facie* case for the district, the section further provides that all parties to the proceeding may offer any competent evidence as to the amount of benefits which any land in the district will receive by reason of the proposed work. When an objector introduces evidence in opposition to the assessment roll, it ceases, in respect of the land concerning which the objection is made, to have any weight whatever as evidence. (*McGee Creek Drainage District* v. *Sides,* 336 Ill. 267). In this case the evidence was conflicting and the jury should not have been instructed that the assessment roll established a *prima facie* case that the lands described in it would be benefited by the proposed improvement to the extent shown by the roll and that the amount assessed against each tract was the proportionate share of the whole cost of the improvement to be borne by that tract. The plaintiffs in error supported their objections by the testimony of a number of witnesses and in this situation, the assessment roll had, as to them, no probative force whatever. *McGee Creek Drainage District* v. *Sides, supra.*

The plaintiffs in error requested the court to give the jury an instruction that the assessment roll, while admitted in evidence, should not be considered as the testimony of a witness, nor entitled to the weight of the testimony of a witness in arriving at a verdict. The court's refusal to give the instruction, the plaintiffs in error contend, was prejudicial to them. When the objectors introduced evidence, the assessment roll, so far as they were concerned, ceased to have any force as proof and thenceforth the issues raised were to be determined from the evidence introduced. (*McGee Creek Drainage District* v. *Sides, supra; City of Rockford* v. *Mower,* 259 Ill. 604). The jury were not instructed upon the subject, and the requested instruction should have been given.

The judgment of the county court of Lawrence county is reversed and the cause is remanded to that court.

*Reversed and remanded.*